## THE "ILLINOIS."

The rule requiring a steamer to keep out of the way of a sailing-vessel is equally imperative upon the latter to keep her course; and where, by her unnecessary deviation therefrom, a collision is rendered unavoidable, the steamer is not liable therefor.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. J. Warren Coulston* for the appellant.

*Mr. Morton P. Henry, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a case of collision in the Delaware Bay, and the facts found are substantially as follows: The "Illinois" was a large steamship, three hundred and sixty feet in length, and of three thousand tons register. She was going up the bay at a speed of ten knots an hour. She had just rounded Dan Baker's shoal on a port wheel, and had got straightened on her course in about mid-channel. The schooner "Ellen Baker" was ahead of her, a little on the port bow, and bound for New Castle, Del. The wind was from the northeastward, and the schooner was by the wind, heading about north-by-west, or north-northwest, and pointing for Reedy Island piers. The vessels were on slightly diverging lines which were about one hundred yards apart. The western or Reedy Island side of the bay was obstructed by ice, while the eastern side was open. When the vessels were probably three or four hundred yards apart, the schooner went in stays and then tacked to the eastward to avoid the ice, which was ahead of and close under her port bow. There was no lookout astern on the schooner, and, until she had changed her course, no one on board had observed the steamer. The steamer had a sufficient lookout. Her master and pilot were on the bridge looking ahead, and they saw the schooner before she tacked. They so directed the steamer's course as to pass the schooner in safety on her starboard side, three hundred feet or thereabouts away, if she kept the course she was on. As

soon as the manœuvre of the schooner was seen on the steamer, orders were given to put the helm hard-a-starboard, to stop the engine, then to back at full speed, and to let go the anchor, with a view to passing under the schooner's stern. These orders were ineffectual to prevent a collision, and the steamer struck the schooner just abaft the main rigging, causing her to capsize and sink.

It seems to us the court below was right, on these facts, in holding the steamer free from blame. The responsibility of avoiding a collision with a sailing-vessel is put by the act of Congress and the sailing rules primarily on a steamer. But the sailing-vessel is under just the same responsibility to keep her course, if she can, and not embarrass the steamer, while passing, by any new movement. A steamer has the right to rely on this as an imperative rule for a sailing-vessel, and govern herself accordingly. Otherwise it would at times be impossible for a steamer to get ahead at all in the thoroughfares of navigation.

In the present case the steamer was in mid-channel. That was the proper place for a vessel of her size, and, under the circumstances, we cannot say her speed was unusual, since, so far as appears, there were no other vessels in the way. Had the schooner kept her course for a minute or two longer, there is scarcely a doubt that the steamer would have got by in safety. It was clearly a fault, therefore, for her to change her course, unless there was a necessity for it. Mere convenience was not enough. The schooner in this court has the affirmative. It rests on her to show error in the decree of the court below, or we must affirm.

It is an important fact that the steamer was not observed from the schooner before the course was changed. While a man stationed at the stern as a lookout is not at all times necessary, no vessel should change her course materially without having first made such an observation in all directions as will enable her to know how what she is about to do will affect others in her immediate vicinity. In the present case, it is not found expressly that the ice was so close under the port bow of the schooner as to make it dangerous for her to keep on as she was going until the steamer got by. She ought to have known

that although the ice was an obstruction on the west side of the bay, she was not far from the place in the channel through which the large steamers which navigated there would be likely to pass if following her. It is not found that there was anything in view from the steamer to indicate to her the necessity for any early change of the course of the schooner. So far as the findings show, the way was open for some distance ahead, and the steamer had the right to assume she might keep her place in mid-channel and go on with safety. We must also infer from what is actually found, as well as from what is not found, that if the schooner had known the circumstances in which she was placed, her change of course would have been delayed until it might be made without danger. Because a steamer must keep out of the way of a sailing-vessel, it by no means follows that a sailing-vessel may unnecessarily throw herself across the bow of an approaching steamer. It is as much the duty of a sailing-vessel to be diligent in the performance of her duty as it is that of a steamer to be mindful of hers. In the case of *The Abbotsford* (98 U. S. 440), it was distinctly found that the tack of the schooner was entirely proper, both for her own safety and in regard to the steamer. She had run out her course, and the steamer, which was yet a considerable distance away, ought to have known it. Consequently the steamer was in fault for getting so close as to put herself in the way of the schooner while doing what the necessities of the navigation actually required, and which a prudent and skilful navigator on the steamer ought to have known she must do at the time it was done. Such is not shown to have been the case here.

*Decree affirmed.*