### THE PLYMOUTH.[1]

### NEAL *v.* THE PLYMOUTH.

*(Circuit Court, D. Maine. February 18, 1886.)*

COLLISION—SCHOONER—TUG AND TOW.

The libelant, while sailing a small boat, was run into by a schooner; the latter vessel being at the time in charge of a tug. *Held*, that, as the evidence showed that the tug and tow would have passed the libelant's boat in safety had he not changed his course, the libel must be dismissed.

In Admiralty.

*H. D. Hadlock*, for appellant.
*Woodman & Thompson*, for appellee.

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

COLT, J. In the early part of the afternoon of October 23, 1884, the libelant, while sailing in a small boat up Casco bay, and standing in towards Falmouth Foreside, was run into by the schooner Julia A. Decker, then in tow and under the control of the steam-tug Plymouth, and bound from Portland to Yarmouth, Maine. The weight of evidence shows that there was but little wind, and that it came in puffs from the south-west. The libelant testifies that he did not see either the tug-boat or schooner until his boat was struck and capsized. The captain of the tug-boat testifies that he was standing near the pilot house, and observed the little sail boat some distance off on the starboard bow; that, as he drew up within two or three hundred yards of her, seeing nobody in her, he ordered Mayberry, the man at the wheel, to blow the whistle, when, no one answering, the whistle was blown a second time. He then hailed the boat, and a man sprung up out from the bottom of the boat, and began at once to paddle towards the vessels until his mast struck the bobstay of the schooner. The captain halloed to him to stop. When the man rose up and paddled, the captain directed Mayberry to starboard the wheel, which was done. When it was found that he would paddle into the tug or schooner, the captain says he directed the tug to stop and back. Capt. Dean's testimony, while it differs in some particulars, such as the distance of the small boat from the tug when the first whistle was sounded, is, upon the whole, confirmed by Mayberry, the man at the wheel, and by Capt. Freeman of the schooner.

The question of negligence in this case turns upon a single point, did the libelant, without warning and suddenly, as the tug was approaching, paddle towards it? This fact is established by the testimony of all the witnesses for the libelees, and is not, I understand, denied by the libelant. The steam-tug was required to keep out of the way of the sailing vessel, provided the latter kept her course. But it was imperative upon the sailing vessel to keep her course, and if she deviates therefrom, and a collision happens, the steamer is not liable therefor. *The Illinois,* 103 U. S. 298; *The R. B. Forbes,* 1 Spr. 328; *The Fannie,* 11 Wall. 238; *The Carroll,* 8 Wall. 302; *The Free State,* 91 U. S. 200. In the present case the steam-tug had a right to assume that the sailing vessel would keep on her course, and for the libelant to take an oar and paddle towards the tug was an act of negligence which relieves the tug from any liability for the collision. Nor can the libelant, upon the facts presented in this case, excuse his act on the ground that the error was committed when the peril was impending and the collision inevitable. The evidence goes to prove that the steam-tug and tow would have passed him in safety had he not rowed towards them.

The decree of the district court dismissing the libel is affirmed.