THE SANTEE.

SANDERS *v.* THE SANTEE.

(*District Court, D. South Carolina.* November 3, 1891.)

COLLISION—STEAM AND SAIL—DUTY OF STEAMER.
    A steamer meeting a sloop on a river at night, where there is ample room, must presume that the latter will maintain its course, and must keep out of the way; and, if she attempts to pass so near as to cause apparent danger of collision, she is solely in fault, although the sloop, under stress of excitement, commits an error by suddenly changing its course.

In Admiralty. Libel by Samuel Sanders against the steamer Santee for collision.

*J. F. Ficken*, for libelant.
*Smythe & Lee*, for claimant.

SIMONTON, J. The libelant is the owner of the sloop E. C. Holland, a small vessel engaged in carrying freight about Charleston harbor and the adjacent streams and bays. On the night of 10th February last she came into collision with the steamer Santee in Ashley river. The sloop was proceeding up the river under mainsail and jib, with a very

light breeze, not exceeding three miles an hour. The steamer was proceeding down the river, against the tide. The sloop had up her lights. Both vessels saw each other for some time before the collision. The collision was sudden and unexpected. The sloop struck the steamer at right angles on her port side, on the wheel-house in front of the wheel, and her bowsprit penetrated the outer bulk-head of the steamer, passed through the berth of the engineer, and broke the inner bulk-head. The sloop was loaded below and on deck with bricks. She was seriously damaged. The steamer sustained no other injury. The law of this case is very simple. We have only to apply the facts. Navigation rule 20, Rev. St. U. S. 4233. "If two vessels, one of which is a sail-vessel, and the other a steam-vessel, are proceeding in such direction as to involve risk of collision, the steam-vessel shall keep out of the way of the sail-vessel." Where a steam and sailing vessel approach each other, so as to involve risk of collision, the latter must keep her course, and the former must keep out of the way. The steamer may be managed upon the assumption that the sailer will keep her course. *The Free State*, 91 U. S. 200. An error or fault on the part of the sailer at the moment of collision, under the excitement caused by the imminent peril, will not absolve the steamer. *The Carroll*, 8 Wall. 302; *The Dexter*, 23 Wall. 89. The duty of avoiding collisions with sailing vessels being upon steamers, the fact of a collision raises a presumption of fault on the part of the steamer, and throws on her owners the burden of proving that those navigating her took all precautions proper under the circumstances, and that the collision was caused by the fault on the part of the sailer or inevitable accident. *The Oregon* v. *Rocca*, 18 How. 570; *The Colorado*, 91 U. S. 692.

The sloop had no other crew than the master and one man. The master is dead. The man has been examined,—an illiterate negro,—who, however, gives his evidence, to all appearance, endeavoring to tell the truth. On the other side, we have the testimony of the master of the steamer and the pilot, both men of intelligence and large experience. At the place of collision the river is about 600 yards wide, with deep water. The steamer, when struck, was about 250 yards from the west shore. The channel was on that shore, but there was enough water on either side of her. Capt. Hopkins, master of the steamer, thus gives the account of the collision:

"We left the Ashepoo Works on our way down to the city, and about opposite Lowndes' avenue we met this sloop, and had this collision. I saw her some time before the collision. I saw her red light. I was then in the pilothouse, and I gave orders to port the wheel. It was done. That was to give the sloop more room, to turn it (our bow) to the right, and bring the boat on our left; and then I took hold of the wheel, and gave it a little more room, so that we could run along with plenty of room to clear him when he came under our bow. *Question.* Did you lose sight of the red light? *Answer.* Just before he struck us I saw his green light. The boat changed her course very suddenly, under our bow. *Q.* When you saw the green light of the sloop did

you take any precautions to prevent the collision? *A.* Immediately stopped the boat and blew the whistle. *Q.* That did not prevent the collision? *A.* No."

Upon the cross-examination he stated that the sloop must have changed her course very suddenly. He adds that he had plenty of room, and, had he anticipated the collision, could have gone either to the east or west of her.

From this statement it appears that the red light of the sloop was seen, and that it remained in sight until just before the collision. So the sloop kept her course up to that point. That the green light appeared suddenly; and that, although the steamer was stopped immediately, this could not prevent the collision. It is manifest that the steamer ported her wheel too late. All that she could accomplish by it was to change her own direction, and, instead of coming down on the sloop bows on, she came broadside. No wonder the frightened negroes, seeing "them coming so straight on us," lost their heads and luffed. But this did not cause the collision, for between the time the green light was seen and the impact of these vessels nothing could prevent the collision. "When upon the whole case there is no decisive evidence of fault on the part of the sailing vessel, the steamer must answer for the collision, when no circumstances appear to show that the accident was inevitable. With plenty of sea-room, and in good weather, a steamer is bound to take the necessary measures in time to avoid a sailing vessel." *The City of Truro*, 35 Fed. Rep. 317.

As to the damages. The rule is stated in *The Baltimore*, 8 Wall. 385, *restitutio in integro*. All the items stated are allowed but three. As the charge has been made for another boat to take the place of the sloop while she was undergoing repairs, I cannot allow the wages of the crew during that time. Nor can I allow the expenses of libelant's witness when he was instructing counsel in this case. Nor the item of incidental expenses. Eliminate these, and let a decree be entered for the remainder, with costs.