## THE PHILADELPHIAN.

### LEWIS et al. v. TRANT.

### WILEY et al. v. SAME.

(Circuit Court of Appeals, First Circuit.  April 18, 1894.)

No. 66.

1. COLLISION—CONFLICTING EVIDENCE.
    Testimony as to precautions taken by a steamer to avoid collision with a schooner, given by intelligent witnesses on board the steamer, who co-operated in the precautionary maneuvers, is not overcome by that of witnesses looking on from remote points, or aboard the schooner, who failed to observe such precautions.

**2. SAME—SCHOONER UNNECESSARILY TACKING ACROSS STEAMER'S BOW.**

A steamship is not liable for collision with a schooner unnecessarily tacking across the steamer's bow, in a narrow channel, and in such close proximity that the steamer cannot avoid her.

Appeal from the District Court of the United States for the District of Massachusetts.

These were two libels against the steamship Philadelphian (William H. Trant, claimant) for damages from a collision between said steamship and the schooner Lizzie Williams,—one by A. S. Lewis and others, members of the crew of said schooner, and Joseph Welch, also on board the schooner at the time of the collision, for loss of personal effects, and other damages; the other by Otis H. Wiley and others, owners of said schooner, for loss of the vessel, and other damages. The cases were consolidated by order of the district court, and, on hearing, the libels were dismissed. Libelants jointly appealed. A motion by appellants for leave to take further proofs was granted (60 Fed. 423), and additional depositions were taken.

The collision occurred in Boston harbor, at 20 minutes past 11 o'clock in the morning of the 27th of April, 1892, a short distance above the upper middle buoy. The steamer was a vessel 455 feet long, 45 feet beam, 3,322 tons, 10,600 tons displacement, and her draught at the time was 26 feet 6 inches. The schooner was about 75 feet long, of 57 tons, and her draught at the time was about 10 feet. At, and for some distance on either side of, the place of collision, the channel for the steamer was about 1,000 to 1,200 feet wide, while, for the schooner, it was about 3,000 feet wide. Both vessels were on their way down the harbor, to sea. The wind was about east, and the tide about slack, at full high water.

The evidence for libelants showed that the schooner left T wharf between 10 and 11 o'clock in the morning, and was beating down the harbor. When she pulled out from T wharf, she stood first on the port tack, towards South Boston. She then tacked, and stood on the starboard tack, over to Jeffries' Point, in East Boston, where she came about again, and stood again on the port tack, to the southward, towards South Boston. She came about again when about a third of a mile off the starboard bow of the steamer, and stood across her bows, on the starboard tack, and while on this tack came in collision with the steamer. The steamer was not seen from the schooner until after she had come about, and gathered good headway, on this last starboard tack.

The evidence on behalf of the steamship was that she left her dock in Charlestown shortly before 11 o'clock, and proceeded down the harbor in the usual way, and at the usual speed, in charge of a licensed pilot. The pilot was on the bridge with the master and third officer. The schooner was seen by the master and pilot of the steamer, from the bridge, while she was making her first starboard tack, towards East Boston, and they then determined upon their course for passing and avoiding her, which was to wait until she should have come about on the port tack, and crossed the steamer's bows towards South Boston, and then pass under her stern. In pursuance of this determination, the steamer was slowed until after the schooner had run out her starboard tack, and crossed the steamer on her port tack, and then started up to pass under the schooner's stern; but she had scarcely started when the pilot and master of the steamer perceived that the schooner was unexpectedly tacking again, right off the steamer's starboard bow. The steamer was at once stopped, and immediately afterwards her helm was put hard a-port, and her engines were reversed at full speed for three minutes before the collision. The port side of the schooner came against the steamer's bow, which cut into her about two feet, and the schooner sunk. At the time of collision the steamer had been almost stopped. There was much evidence introduced on behalf of the steamer that her efforts to avoid the schooner, even after the latter tacked so unexpectedly when close to the steamer's starboard bow,

would have been successful, had the schooner held her starboard tack, but that the schooner, just as she was crossing the steamer's bow, luffed up in the wind, lost her headway, and drifted on to the steamer. Witnesses called for the schooner, however, denied that she, at this time, did luff into the wind, and lose her headway.

The opinion rendered in the district court by Nelson, District Judge, was as follows:

"It plainly appears from the evidence in the case that the collision was caused by no fault of those in charge of the Philadelphian, but was caused solely by the gross negligence of the master of the Lizzie Williams, in coming about upon the starboard tack, when on the southerly side of the channel, and running across the bows of the steamer, for which change of course no necessity or excuse is shown."

Frederic Dodge, for appellants.

Lewis S. Dabney and Frederic Cunningham, for appellee.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PER CURIAM. Upon careful examination of the evidence, as presented by the record of these cases, and full consideration of the able argument for the appellants, the court perceives no error in the conclusion of the district judge. The testimony in behalf of the steamer comes from intelligent witnesses, who were in position to know fully the measures taken to avoid a collision, in respect to which they testify, and shows that every precaution required of those navigating the steamer, for the avoidance of the collision, was promptly exercised. The failure of witnesses looking on from remote points, or even of those aboard the schooner in motion, to observe or to know such precautions, cannot overcome this clear consent of evidence from the witnesses who co-operated in those precautionary maneuvers. The schooner, beating out of Boston harbor, where the working channel for large ocean steamers, like the Philadelphian, is narrow, while she had a right to tack when necessary or highly prudent, should still have taken some care to see that, by tacking, she did not make it impossible for either sailing or steam vessels following her to keep clear, and, if practicable, should have held on her tack long enough to avoid such result. That in this case the schooner could safely, and ought to, have stood longer on her port tack, we think, is clear. If the witnesses for the libelants are correct in denying any vacillation in the navigation of the schooner, then it is plain that the whole trouble was caused by her sudden and unnecessary tacking, whereby she so threw herself in the path of the steamer as to make collision inevitable. If, on the other hand, at the time she tacked, there was room for her, by holding her course, to go clear, but by hesitation, and first luffing, and then falling off, she lost the very short time when she could have safely crossed the steamer's bow, the fault was still hers. But we are of opinion that the witnesses in behalf of the steamer are mistaken about the schooner's luffing and falling off, and that the whole evil was caused by the schooner's improperly and unnecessarily tacking across the steamer's bow, and in so close proximity that she could not be avoided. Decree of the district court affirmed.