Rockingham, }
Dec., 1895. }

## CUTLER, *Assignee, v.* DUNN.

In an action to set aside a sale made within three months of insolvency proceedings, unless the debtor was in fact insolvent it cannot be held that his grantee had reasonable cause to believe him insolvent.

Certain evidence considered insufficient for submission to a jury upon such issue.

TROVER, by the plaintiff as assignee of Martin R. Kelly, to recover the value of a stock of goods sold by Kelly to the defendant within three months of the insolvency proceedings. At the close of the plaintiff's evidence a nonsuit was ordered, and the plaintiff excepted. The facts are stated in the opinion.

*William P. Hale* (of Massachusetts), for the plaintiff.

*Eastman, Young & O'Neill,* for the defendant.

PARSONS, J. The only question discussed by counsel is whether there was not evidence sufficient to authorize a jury to find that the defendant had, at the time of the purchase, reasonable cause to believe the debtor insolvent. To establish reasonable cause for belief that the debtor is insolvent it is not enough that the creditor has some cause to suspect the insolvency of the debtor, but he must have such a knowledge of facts as to induce a reason-

able belief of the debtor's insolvency. *King* v. *Storer*, 75 Me. 62; *Grant* v. *Bank*, 97 U. S. 80; *Barbour* v. *Priest*, 103 U. S. 293. "This is a fact to be found by the jury; but to authorize them to find the fact, it must be established by competent and sufficient evidence. . . . The direct evidence introduced by the plaintiff tended to prove that the defendant had no knowledge or belief that the debtor was insolvent. And there was nothing in the circumstance on which the plaintiff relied, which had any legal tendency to prove that the defendant was aware of any fact which would indicate insolvency. It did not appear that the debtor had failed to meet any obligation as it became due. . . . There was nothing . . . which could have authorized them [the jury] to find that he [the defendant] knew or had cause to suspect that he [the debtor] then owed debts to a greater amount than his property was ample to discharge." *Everett* v. *Stowell*, 14 Allen 32, 35. This language of the Massachusetts court is exactly descriptive of the plaintiff's evidence in the present case. In addition, there is in this case no evidence that, at the time of the sale complained of, the debtor, Kelly, was not perfectly solvent. The decree in insolvency appointing the assignee is conclusive of his right to sue and of the validity and regularity of the proceedings in insolvency (*Howes* v. *Burt*, 130 Mass. 368), although our statute does not contain the specific provision of the Massachusetts law (Mass. P. S., *c.* 157, *s.* 51); but such decree does not establish, as against the defendant, the debtor's insolvency at the time of sale. When that fact is essential to the assignee's right to recover, he is held to proof. *Smith* v. *Merrill*, 9 Gray 144. Though the statute under which this action is brought (P. S., *c.* 201, *s.* 26) does not in terms require the assignee to prove that the debtor was insolvent at the time of the sale, the imposition of the greater burden of proving the defendant's reasonable cause to believe the debtor insolvent would seem to include the lesser one of proof of actual insolvency. It is hardly to be understood that the legislature intended to punish the defendant by taking from him property fairly bought and paid for because a jury might think he had reasonable cause to believe a fact which did not exist, namely, the insolvency of the debtor at the time of the sale. "Unless the debtor was in fact insolvent, it cannot be held that such a grantee had reasonable cause to believe him insolvent." *Wager* v. *Hall*, 16 Wall. 584, 601; *Bridges* v. *Miles*, 152 Mass. 249, 253.

The only competent evidence offered upon this issue came from the defendant, who was called by the plaintiff as a witness. It appeared that the insolvent, Kelly, had for some over two years been engaged in the business of retailing groceries in Exeter, in which business the defendant was also engaged for many years at the same place. The defendant testified that in the fall

of 1893 Kelly wanted to go out of trade, and asked him several times to buy his stock; that on October 18 of that year a trade was agreed upon, by which the defendant was to pay a fair market price for the entire stock, to be ascertained by an inventory of it, and that the defendant then paid Kelly $93.38 to bind the bargain; that an inventory was taken on October 24, and a bill of sale given for $964.23; that the inventory was taken in the evening and not completed until about midnight; that the amount was not figured up for several days; that Kelly thought the amount would be the sum named in the bill of sale, but that it proved to be less; that the defendant subsequently and within a few days paid Kelly between $600 and $700 in cash, which was the full value of the goods; that no part of the consideration was a previously existing debt; that he purchased in good faith, supposing and believing that Kelly was solvent; that Kelly so represented, told him he was owing no bills of more than thirty days' standing, and that his accounts much exceeded his indebtedness; that Kelly's reputation for solvency was good in the community. This evidence was uncontradicted. It also appeared that the defendant in July, 1891, made a business arrangement with Kelly by which he was to furnish groceries to him for the sum of $5 per week; that this arrangement continued for some thirty-two weeks, when the defendant discontinued it because Kelly had not paid him as he agreed, and because Kelly had become acquainted with the business and was buying from other parties; that at the time of the sale Kelly owed him some $20 on book account; that the owner of Kelly's store being unwilling to lease it to him, because he drank, the defendant leased it himself and sublet it to Kelly. The plaintiff claims that these facts are evidence from which the jury might find that the defendant had reasonable cause to believe Kelly insolvent at the time of the sale, October 18, 1893.

Whether the termination in March, 1892, of the business arrangement between the parties for the supply of groceries, which had been in force for thirty-two weeks, and the fact that Kelly had become acquainted with the business and was purchasing of others, should have given the defendant reasonable cause to believe Kelly financially unsound in October, 1893, would depend upon facts not disclosed in evidence. A fair inference from the fact that Kelly, having become acquainted with the business, bought his goods of others rather than the plaintiff, might be that he bought them at a lower rate and hence was less likely to become insolvent than if he purchased of the defendant at a higher price. However this may be, if the fact was that the defendant sold to Kelly at so low a price that his purchasing from others in preference to him for eighteen months should have excited in the defendant's mind a distrust of Kelly's

financial soundness, there is no such evidence in the case ; and
the mere fact of Kelly's change of a source of supply of itself
alone cannot furnish a foundation for a finding either way.
The most stress is put upon the fact that in July, 1891, when
Kelly hired the store, the landlord was unwilling to let the store
to Kelly because he drank, and so the defendant hired the store
and sublet it to Kelly, and the case of *Alden* v. *Marsh*, 97 Mass. 160,
162, is cited.  In that case it is held that the fact that the debtor was
intemperate and neglected his business would be competent evi-
dence having some tendency to prove the debtor was insolvent, and
that it tended to prove the existence of a cause of which insol-
vency would be the natural and probable effect.   The evidence
in the present case comes far short of the case cited.   While
knowledge that a debtor was of intemperate habits and neg-
lected his business, or that he had the reputation of neglecting
and mismanaging his business (*Bartholomew* v. *McKinstry*, 6
Allen 567), might, as the usual and natural result of such a
course of conduct, promote a suspicion of probable loss in busi-
ness, and with other evidence be competent on the question of
reasonable cause, evidence that the respondent drank in July,
1891, before he entered the business, without any evidence as to
his habits in the conduct of his business, does not furnish
ground for an intelligent mind to determine that the business
was so conducted as to furnish reasonable ground of in-
solvency in October, 1893, two years and a half after.   It
may be that a man who has once had a habit of intox-
ication is less likely thereafter to carry on to a successful re-
sult a grocery business ; but that insolvency generally, in the
common experience of mankind, follows the engaging in a new
business by one who has indulged to excess in alcoholic stimu-
lant, is not so established, as the relation of cause and effect, that
more evidence than the meager fact is not needed to support the
desired finding.   There is no evidence of intemperate habits in
the debtor, or neglect while in the management of this busi-
ness, and nothing, so far as the case shows, to lead to a belief
that he was not operating it successfully.

The facts, that the inventory was made in the evening of Oc-
tober 24, the trade having been made October 18, and bound by
the defendant's payment, and that Kelly at the time of the sale
owed the defendant $20 on book account which was not included
in the purchase, are too trivial for serious consideration.   The
case does not disclose evidence competent for the consideration
of the jury upon which they could find that the defendant had
reasonable ground to believe the debtor, Kelly, insolvent at the
time of the sale which the plaintiff seeks to set aside.   No claim
is made that the facts present any other issue for the jury.
Whether under the statute, on any state of facts, an assignee

might be entitled to avoid a like sale without proof that the purchaser had reasonable cause at the time of sale to him to suspect the debtor's insolvency, is a question not raised by the case, which has not been considered, and is not decided.

*Nonsuit sustained.*

BLODGETT, J., did not sit: the others concurred.