JACOBSEN et al. v. DALLES, P. & A. NAV. CO.

(Circuit Court of Appeals, Ninth Circuit. April 7, 1902.)

No. 728.

COLLISION—STEAMER AND SAILBOAT.

Where it was found, on evidence which supported such finding, that a sailboat, when being overtaken by a steamer, was on a course nearly parallel to that of the steamer, and at such a distance as to involve no danger of collision if both vessels kept their courses, the steamer was not in fault for not reducing speed, although, by the navigation rules (20 and 23), she was required to keep out of the way, and, "if necessary, slacken her speed or stop or reverse," since by rule 21 the sailboat was required in such case to keep her course and speed; and the latter must be held solely in fault for a collision brought about by her changing her course and attempting to cross the steamer's bows, when, on seeing such maneuver, the steamer at once reversed, and did all that was possible to avert the collision.[1]

Appeal from the District Court of the United States for the District of Oregon.

See 93 Fed. 975; 106 Fed. 428.

T. J. Geisler and W. W. Cotton, for appellants.

Carry & Mays, for appellee.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

MORROW, Circuit Judge. It appears that on August 14, 1898, a collision occurred between the river steamer Sarah Dixon, operated by the respondent, and a sailboat, in charge of the libelant Jacobsen on the upper Columbia river, resulting in the wreck of the sailboat, personal injuries and loss of property to the libelants Jacobsen and Forde, and the death of Hansen, whose administrator appears herein as a libelant.

The steamer was going up the river to the Dalles, Or. The sailboat was beating down the river towards White Salmon, Wash. The day was bright and clear, but a strong wind was blowing up the river, so that the sailing vessel was obliged to tack to and fro across the river to keep under way and proceed on its course.

The libelants charge that, by reason of the courses of the vessels lying in opposite directions, and the fact that it was necessary for the sailing vessel to tack and cross the course of the steam vessel, it became the duty of both vessels to comply with the rules of navigation for such cases established and provided; that under these rules it was the duty of the steamboat to proceed cautiously and so navigate as to keep out of the way of the sailing vessel, by directing its course astern of the sailing vessel, by timely slackening of speed, or stopping; that the officers of the steamboat did none of these things, and that the collision was therefore wholly occasioned by the negligence and improper conduct of the respondent, its agents and servants. It is alleged that the libelant Jacobsen was and is an experienced sailor,

[1] Collision rules, see notes to The Niagara, 28 C. C. A. 532; The Mount Hope, 29 C. C. A. 368.

114 F.—45

and properly navigated said sailing vessel, and that the libelant Will E. Forde and one Harper L. Hansen were with him in said sailing vessel.

The respondent answers these charges by averring that on said 14th day of August, 1898, the steamer Dixon, being in good condition, well equipped and manned, arrived at a point on the Columbia river opposite Eighteen Mile Island, going up stream, and on a course slightly east of north, nearer to the Washington shore than to the Oregon shore; that at that point there appeared in view a small fishing boat under sail, bearing down the river and diagonally crossing on a course from near Mosier Rock, on the Oregon side, toward Eighteen Mile Island, on the Washington side, and on such a course as would have carried her far behind the said steamer; that the wind was blowing up stream at an average rate of 25 miles an hour, and when said sailboat had approached within some 500 feet of the path of the steamer, and in advance of her, the course of the sailboat was changed by tacking to starboard, so as to run on a course nearly parallel with the course of the steamer, but slightly converging toward the line the said steamer was pursuing; that on this latter course the sailboat was traveling in the same general direction and in advance of the steamer, and in such a position the steamer would have overtaken and passed her on the sailboat's port side, at an ample distance to have avoided any possible chance of collision; that when the steamer had almost overtaken the sailboat, and the latter was some 100 feet off the starboard bow of the steamer, the course of the sailboat was suddenly and without warning, and without any reason or excuse, turned to port, and so changed as to direct her course directly across the path of the steamer and under her bows; that the officers and crew of the steamer perceived that a collision was impending, and signaled and shouted to warn the sailboat occupants of the danger, and at once stopped and reversed the engines of the steamer, and began to back her, and turned her aside to avoid the accident; that the steamer was under full control, but was a large and heavy vessel, and was running with the wind astern, so that, in spite of the efforts made as aforesaid, she continued to go forward after the engines were reversed and the wheel turning backward, and struck the sailboat about 10 feet from the bow. It is averred that the said Jacobsen, in charge of the sailboat, was in an intoxicated condition, and utterly unfit to manage the boat; that he could have avoided any accident by not attempting to cross the bows of the steamer, or by promptly diverting the course of his boat when warned and signaled that a collision was impending. It elsewhere appears that the steamer was some 140 feet long, and the sailboat about 26 feet in length.

A number of witnesses were called, and testified in the presence of the court as to the change of course of the sailboat, the action of the steamer thereafter, and as to the intoxicated condition of the libelant Jacobsen. Jacobsen and Forde, libelants herein, testified that the course of the sailboat was not changed prior to the collision, and that Jacobsen had not been drinking. But their testimony was discredited by the court below, it being entirely unsupported by the testimony of the other witnesses, and, in fact, impeached by some, while the circum-

stances of the case and the proofs made warranted a finding in favor of the respondent. The court therefore found that the officers and agents of the steamer were without fault, and that the said collision was wholly caused by the negligence and want of care of the libelant Jacobsen. The libel was accordingly ordered dismissed. Upon petition for rehearing, the cause was reargued before the court, and reconsidered by the court, resulting in the same decree as before.

The libelants assign as error these findings of the court, and the failure of the court to apply the rules of navigation to the facts of the case, under which, it is claimed by the libelants, it was clearly the duty of the steamer to keep out of the way of the sailboat. These rules are contained in the act of June 7, 1897 (30 Stat. 96, 101), and are as follows:

"Art. 20. When a steam vessel and a sailing vessel are proceeding in such direction as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel.

"Art. 21. Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed.

"Art. 22. Every vessel which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other.

"Art. 23. Every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse.

"Art. 24. Notwithstanding anything contained in these rules, every vessel, overtaking any other, shall keep out of the way of the overtaken vessel."

There is some question whether these rules were intended to apply to a case where the sailing vessel is a mere rowboat equipped with a sail; but it will not be necessary to discuss that question in this case. It will be assumed that these rules do apply to the navigation of such a vessel. What, then, do these rules require? They require, among other things, that, when a steam vessel and a sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel. This is a very important rule in the law of navigation, and often prevents collisions between steam vessels and sailing vessels; or, where collisions do occur between such vessels, determines their duty and liability. But an appeal to this rule does not determine any question of negligence in this case upon the facts as found by the court. The court found as a fact that the sailboat was proceeding on a course with respect to the steamer which did not at first involve a risk of collision, but that it changed its course and sailed directly into the pathway of the steamer, incurring the peril of an immediate and unavoidable collision. The finding of the court in this respect is as follows:

"That, at the time of the collision mentioned in the amended libel and answer, the respondent was the charterer and was operating the steamer Sarah Dixon, near Eighteen Mile Island, on the Columbia river, when there appeared in view a small fishing boat under sail, in which were the libelants Jacobsen and Will E. Forde and Harper L. Hansen, now deceased, which said sailboat was in charge of the said Jacobsen, and was bearing down the river, and on a course from near Mosier Rock, on the Oregon side, toward the shore opposite Eighteen Mile Island, on the Washington side of the river, and on such course as would have carried her behind the said steamer, the wind at the time blowing up stream; and, when the said small boat had approached within some distance of the above steamer, she changed her course

by tacking to the starboard, so as to run on a course nearly parallel with the course of the steamer, but slightly converging toward the line the steamer was pursuing, traveling in the same general direction in advance of the steamer, and thereupon the course of the said sailboat was again so changed when the steamer had almost overtaken the said sailboat as to direct her course across the path of the steamer and under her bows; the day being bright and clear and both vessels distinctly visible."

The conduct of the sailboat, under these circumstances, was not justified by any rule of navigation. On the contrary, it violated the rule which requires that where, by other rules of navigation, one of two vessels is to keep out of the way, the other shall keep her course and speed. This rule has been construed as requiring that a sailing vessel in the near presence of a steamer must beat out its tack where there are no exigencies of navigation to prevent it. The W. C. Redfield, 29 Fed. Cas. 477; The Clara Davidson (D. C.) 24 Fed. 763; The Philadelphian, 10 C. C. A. 127, 61 Fed. 862; The Illinois, 103 U. S. 298, 26 L. Ed. 562; Spencer, Mar. Coll. § 91. In the case of The Illinois, supra, the supreme court said:

"Because a steamer must keep out of the way of a sailing vessel, it by no means follows that a sailing vessel may unnecessarily throw herself across the bow of an approaching steamer. It is as much the duty of the sailing vessel to be diligent in the performance of her duty as it is that of a steamer to be mindful of hers."

Under the facts as found by the court in the present case, the act of the sailboat in attempting to cross the bow of the steamer was an act of culpable negligence, rendering it responsible for the collision.

With respect to the findings of fact, it is sufficient to say that a reading of the evidence satisfies us that not only is the evidence sufficient to support the findings of the district court, but the presumptions and weight of evidence are in favor of the conclusions reached in the decree dismissing the libel.

The decree of the district court is therefore affirmed.