THE EUROPA.

(District Court, S. D. Alabama. July 5, 1902.)

No. 988.

1. COLLISION—STEAM AND SAILING VESSELS—DUTY OF SAILING VESSEL TO KEEP HER COURSE.

A sailing vessel is not justified in changing her course, when nearly ahead of a closely approaching steamer, because of a mere apprehension of danger; and where, in fact, the change creates or increases the danger, she will be held in fault for a resulting collision.

2. SAME—EVIDENCE CONSIDERED.

A small sloop was crossing the river at Mobile on a northeasterly course, making little headway owing to the light wind and strong outward current. When about the center of the channel, she saw a steamer coming down stream from 900 to 1,200 feet distant. Fearing collision, the sloop wore round, and started for the west side of the river; the steamer being then not more than 600 feet distant. A collision followed, in which the sloop was sunk. Those in charge of the steamer testified that they were steering to pass to the westward and astern of the sloop, and would have done so in safety had she not unexpectedly changed her course; but that it was then too late to avoid collision. The evidence also tended to show that the steamer was going at slow speed until the sloop changed course, and then stopped her engine, and did all that could be done to prevent the collision. *Held*, that the sloop was alone in fault in violating the rule which, under the circumstances, required her to keep her course.

In Admiralty. Suit for collision.

Smith & Gaynor, for libelants.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. The facts of this case, as shown by the evidence, are, in substance, that one of the libelants owned the sloop for the loss of which this suit is brought. The sloop was between 20 and 25 feet long, 9 or 10 feet beam, and rigged with mainsail and jib and with such other apparel, etc., as was suitable to her

¶ 1. See Collision, vol. 10, Cent. Dig. §§ 46, 48–51.

trade, which was principally that of oystering. She had aboard the other two libelants, who composed the entire crew. One of them was captain and the other mate. The sloop was at the time of the collision without cargo. About 10 o'clock on the morning of April 13, 1902, she came out from a pier or slip on the west side of Mobile river in the south part of the city of Mobile, bound up the river. The wind was from the south, and light. The current was running out and strong. The sloop, having cleared a bark which was lying at the end of the pier alongside the slip from which she came, proceeded in a northeastwardly course in the direction of the east side of the river. The two libelants, who testified to the state of the wind and current, stated that there was hardly enough wind to go against the current. They had all sails spread, but made slow headway. When near midway the channel they saw the steamer Europa coming down stream, and appearing to be 1½ or 2 blocks away, probably 900 to 1,200 feet. The mate of the sloop stated they did not see the steamer before. Up to this time the sloop had been on her starboard tack. Her sails were to the port, and somewhat obstructed the view directly up the river. Just as the crew of the sloop saw the steamer, they hauled down the jib, the sloop "wore around," and with sail to the starboard started on her port tack; going towards the west side of the river. She was barely under way, and very slow way, when the steamer collided with her on the starboard side, striking her just forward of the rigging. The sloop was sunk, and became a total loss, with all property and effects on board. The two members of the crew were thrown into the water, but were soon rescued by two men in a small boat who were near by. The witnesses for the libelants heard no whistle blown by the steamer, and did not see that she reversed her engines or slowed down her speed. The steamer, as testified by her officers, was on an outward voyage, deeply loaded with cargo, drawing 14 feet, 652 tons net, 1,041 tons gross, and about 30 feet beam. She was descending the river on her starboard side, and on the west side of the channel. The sloop was a little north of the bark referred to, and was heading north northeast toward the eastern bank of the river, some 3 or 4 blocks away, when first seen by the officers of the steamer. Her sail was pretty well free, and extended out on the port side. The steamer blew her whistle several times, and was keeping to the west bank, expecting to clear the sloop on the steamer's port side. When the steamer was in about 600 feet of the sloop, the latter hauled down her jib and "jibbed her mainsail," and headed for the west bank of the river, across the course of the former. The steamer was going down the river at half speed, and when they saw the sloop she was put at slow speed. When a collision seemed imminent, her engines were stopped, but the vessels were very near together then,—too near, it is claimed, to avoid the collision. The witnesses for claimant are the master and chief officer of the steamer and the local bar pilot, who was navigating her down the channel. They state that the steamer could not have prevented the collision, because the sloop changed her course so unexpectedly, and when so near the steamer, that the latter had not time or opportunity to get out of the way; that the steamer was

well to the west bank of the channel; and that, although she shifted her wheel and stopped her speed, with the current she had to contend with it was impossible to do more than she did to avoid the collision. The pilot testified that he expected the sloop to keep her course and speed; that he saw nothing to prevent her doing so; and that he maneuvered the steamer to pass to the westward and astern of the sloop, and could and would have done so without trouble but that the sloop suddenly changed her course, and undertook to run across the course of the steamer with a light wind and adverse current, when too near the steamer for the latter to get out of the way and avoid the collision. At the time the sloop changed her tack, the steamer was in about 600 feet of her, apparently between 2 and 3 lengths of the steamer. The channel at the point of collision is 150 feet wide, about 30 feet of which, on the west bank, was occupied by the bark referred to.

It appears, then, that the sloop was on her starboard tack going northeast, and was near midchannel when her crew sighted the steamer approaching from up the river. Evidently believing there was risk of collision, with the idea of getting out of the way of the steamer, they let the sloop "wear around," as they express it, headed for the west side of the river, and were on the port tack when the collision occurred. The sloop came about in the vicinity of the steamer, and the collision followed. No reason is given, and none appears, for not holding her course, further than apprehension of danger. But mere apprehension of danger is not sufficient to exonerate a sailing vessel for failure to hold its course, unless it was apparent that a collision was then imminent. It does not appear from the evidence in the case that a collision was imminent until the sloop by her change of course made it so. Where a sailing vessel and a steamer collide, the presumption of law is that the steamer is at fault, being required to keep out of the way; and nothing but inevitable accident or the misconduct of the sailing vessel can overcome this presumption; and the fault of the sailing vessel must be clearly proven. Prima facie the steamer is at fault, to escape which misconduct on the part of the sailing vessel must be shown, and such a compliance with the rules on the part of the steamer as to absolve it from fault. Spencer, Mar. Coll. § 93, and authorities cited in note 5, Nav. Rule 20, Act June 7, 1897 (30 Stat. 96, 101). The rule is that "where one of two vessels is to keep out of the way the other shall keep her course and speed." Nav. Rule 21. Where a sailing vessel and a steamer are proceeding in a direction that may involve collision, the duty of the former is to hold its course, while the latter keeps out of its way. The observance of the rule is no more strictly required of one than of the other. The rule creates a mutual obligation, whereby the sailing vessel is required to hold its course in order that the other may know its position, and not be led into erroneous maneuvers in endeavoring to comply with the requirements of the rule. The rule is imperative, and admits of no option or choice. Spencer, Mar. Coll. § 89. Whether it is safer for the steamer to pass on one side than on another are questions the sailing vessel is not permitted to decide under ordinary circumstances. The duty to hold its course yields

only to actual and obvious necessity. Spencer, Mar. Coll., supra; The Santee (D. C.) 48 Fed. 126; The Lizzie Henderson (D. C.) 20 Fed. 524. A sailing vessel, departing from its course when it should have maintained it, is liable for the results following such change if it contributes to the collision. Spencer, Mar. Coll., supra. The rule requiring a sailing vessel to hold its course does not take effect until the vessels are in a position where a collision may be promoted by a change; and mere apprehension of danger is not sufficient to exonerate a sailing vessel for failure to hold her course. Spencer, Mar. Coll., supra; The Monticello v. Mollison, 17 How. 152, 15 L. Ed. 68. When a steamer takes precautions sufficient to avoid collision, and they are rendered ineffective by failure of the other to keep its course, it is thereby absolved from liability unless it clearly appears that it might have avoided the sailing vessel notwithstanding its error; but the evidence must be clear and convincing to establish such liability. Spencer, Mar. Coll. § 91; The Potomac, 8 Wall. 590, 19 L. Ed. 511; The Adriatic, 107 U. S. 512, 2 Sup. Ct. 355, 27 L. Ed. 497.

"The conduct of the sloop under the circumstances was not justified by any rule of navigation. On the contrary, it violated the rule which requires that, where one of two vessels is to keep out of the way, the other shall keep her course and speed. This rule has been construed as requiring that a sailing vessel in the near presence of a steamer must beat out its tack where there are no exigencies of navigation to prevent it."

Quoted from the case of Jacobsen v. Navigation Co. (C. C. A.) 114 Fed. 705. And in the case of the Illinois, cited in the case last referred to, the supreme court said:

"Because a steamer must keep out of the way of a sailing vessel, it by no means follows that a sailing vessel may unnecessarily throw herself across the bow of an approaching steamer. It is as much the duty of the sailing vessel to be diligent in the performance of her duty as it is that of a steamer to be mindful of hers." The Illinois, 103 U. S. 298, 26 L. Ed. 562.

"A steamship is not liable for collision with a schooner unnecessarily tacking across the steamer's bow in a narrow channel, and in such close proximity that the steamer cannot avoid her." The Philadelphian, 10 C. C. A. 127, 61 Fed. 862.

The last case is also authority for the proposition that

—"Testimony as to precautions taken by a steamer to avoid collision with a schooner, given by intelligent witnesses on board the steamer, who co-operated in the precautionary maneuvers, is not overcome by that of witnesses, looking on from remote points or aboard the schooner, who failed to observe such precautions." The Philadelphian, supra.

I find from the evidence that the sloop was at fault, which caused or contributed to the collision; and it does not convince me that the steamer neglected any precautions rendered necessary by the special circumstances of the case or required by the rule. Libel dismissed.