## BLEASE v. GARLINGTON.

1. Cases in equity come here from the circuit courts, and the district courts sitting as circuit courts, by appeal, and are heard upon the proofs sent up with the record. No new evidence can be received here.
2. So much of the Judiciary Act of 1789 as relates to the oral examination of witnesses in open court in causes in equity was not expressly repealed until the adoption of the Revised Statutes, sect. 862 of which provides that "the mode of proof in causes of equity and of admiralty and maritime jurisdiction shall be according to the rules now or hereafter prescribed by the Supreme Court, except as herein specially provided."
3. While this court does not say, that, even since the Revised Statutes, the circuit courts may not in their discretion, under the operation of existing rules, permit the examination of witnesses orally in open court upon the hearing of cases in equity, it does say that they are not now by law required to do so; and that, if such practice is adopted in any case, the testimony presented in that form must be taken down, or its substance stated in writing and made part of the record, or it will be entirely disregarded here on an appeal.
4. If testimony is objected to and ruled out, it must still be sent here with the record, subject to objection, or the ruling will not be considered. A case will not be sent back to have the rejected testimony taken, even though this court might, on examination, be of opinion that the objection ought not to have been sustained.
5. As this cause is in equity, the act of 1872 (17 Stat. 197; Rev. Stat., sect. 914) has no application to it.
6. Where a party, knowing the pecuniary condition of a debtor, purchased a claim against him of an ascertained amount, an opinion, however erroneous, expressed by the seller as to the value of the claim, does not affect the validity of the sale. Under such circumstances, each party is presumed to rely upon his own judgment.

1

APPEAL from the Circuit Court of the United States for the District of South Carolina.

Mr. *James Lowndes* for the appellant.

Mr. *W. W. Boyce* for the appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This suit was brought for the foreclosure of a mortgage made by Blease to Garlington. The bill is in the ordinary form. Blease, in his answer, admits the execution of the note and mortgage, but insists, by way of defence, that Garlington "deceived him as to the value of the consideration of the said note and mortgage, and has not complied with his positive agreement." The history of the transaction, he says, is as follows:—

"The complainant, as the administrator of J. M. Young, deceased, held a large claim against the estate of John B. O'Neall, deceased, who had been the guardian of the said J. M. Young; and Robert Stuart and H. H. Kinard were the sureties on his bond. The complainant had commenced suit on said bond against Robert Stuart, and proceedings to force him into bankruptcy; and his life seemed to be endangered by the excitement which this last proceeding produced, he being naturally in very feeble health. Under these circumstances, negotiations were commenced between the complainant and this respondent, the friend of the said R. Stuart, in regard for the sale of the claim of the said complainant against the said Robert Stuart, as surety on the said guardianship-bond of said J. B. O'Neall, deceased; and this respondent was induced to purchase said claim at $6,000 ($4,000 of which was paid in cash, and the note described in bill given for $2,000) by the assurance of the complainant that said claim was worth at least $6,000, and he made some calculations to show this, and said, as this claim was worth $6,000, it would not be right for him to take less than that sum, and that he would not do it. This purchase was made upon the further assurance and undertaking of the complainant that he would obtain judgment for this respondent. This defendant avers that said purchase would not have been made by him at that price but for the said assurance and promise of the complainant, in which this respondent put implicit confidence. This respondent, further answering, states, that the said Robert Stuart died before judgment was obtained on said claim; and this respondent has been informed and believes that his

estate is so utterly insolvent that it will not pay any thing like the sum of $6,000 on said claim, and he asks that this case be not tried until the true condition of said estate can be ascertained. This defendant further submits to this honorable court, that the complainant, having deceived this defendant as to the value of said claim against Robert Stuart, and not having complied with his part of the contract to obtain judgment on said claim, is not entitled to enforce collection of said note and mortgage in this court, where equity is administered, and asks that the whole contract may be set aside, and the complainant required to deliver up to this defendant the said note and mortgage to be cancelled, and to refund the $4,000 paid in cash to him on said contract, with interest."

Upon the hearing in the court below, after the plaintiff had submitted his case upon the pleadings and his mortgage, the defendant presented himself as a witness to be examined orally in open court, and proposed to testify to the following facts, to wit: —

" 1. That one of the conditions of the original agreement for the sale of the liability of Robert Stuart, as one of the sureties on the bond of J. B. O'Neall, as guardian of J. M. Young, plaintiff's intestate, to the defendant, was that the plaintiff should obtain judgment against the said R. Stuart; and that, when the agreement was drawn up and presented to the defendant, he called attention of plaintiff to the fact that that part of the agreement which obligated him to get judgment had been left out, and insisted that it should be inserted; and he was assured that that condition should be carried out, and that it was not necessary to rewrite the agreement for the purpose of putting it in.

" 2. That, during the negotiations for the sale of the aforesaid liability of R. Stuart, the plaintiff represented to the defendant that said liability or claim was worth at least $6,000 ; and that, in fact, it is not worth $2,500.

" 3. That the defendant did not know the then financial condition of R. Stuart, and put implicit confidence in the promises and representations of the plaintiff, and would not have made the trade but for such assurance."

His proposition, made in writing, is sent here as part of the record. The court refused to receive the testimony, and it was not taken. A decree having been entered in favor of Garlington, Blease brings the case here by appeal.

Cases in equity come here from the circuit courts, and the district courts sitting as circuit courts, by appeal, and not by writ of error. Rev. Stat., sect. 692. They are heard upon the proofs sent up with the record from the court below. No new evidence can be received here. Rev. Stat., sect. 698.

The facts relied upon by Blease were neither proved nor admitted in the court below. Testimony in support of them was offered; but it was not received. We do not know, that, if it had been received, it would have been sufficient. If we find that the court erred in refusing the testimony, we shall be compelled to affirm the decree because of the lack of proof, or send the case back for a new hearing.

An important question of practice is thus presented for our consideration.

The Judiciary Act of 1789 (1 Stat. 88, sect. 30) provided that the mode of proof by oral testimony and examination of witnesses in open court should be the same in all the courts of the United States, as well in the trial of causes in equity as of actions at common law. By sect. 19 of the same act, it was made the duty of the Circuit Court, in equity cases, to cause the facts on which they founded their decree fully to appear upon the record, either from the pleadings and decree, or a statement of the case agreed upon by the parties or their counsel, or, if they disagreed, by a stating of the case by the court. Subsequently, in 1802 (2 Stat. 166, sect. 25), it was enacted that in all suits in equity the court might in its discretion, upon the request of either party, order the testimony of witnesses therein to be taken by depositions. In 1803 (2 Stat. 244, sect. 2) an appeal was given to this court in equity cases, and it was provided, that, upon the appeal, a transcript of the bill, answer, depositions, and all other proceedings in the cause, should be transmitted here. The case was to be heard in this court upon the proofs submitted below.

In *Conn. et al.* v. *Penn.*, 5 Wheat. 424, decided in 1820, this court held that a decree founded in part upon parol testimony must be reversed, because that portion of the testimony which was oral had not been sent up. For this reason, among others, the cause was sent back for further proceedings according to equity. Chief Justice Marshall, in delivering the opinion of the court, said (p. 426), —

"Previous to this act (that of 1803), the facts were brought before this court by the statement of the judge. The depositions are substituted for that statement; and it would seem, since this court must judge of the fact as well as the law, that all the testimony which was before the Circuit Court ought to be laid before this court. Yet the section (of the act of 1789) which directs that witnesses shall be examined in open court is not, in terms, repealed. The court has felt considerable doubt on this subject, but thinks it the safe course to require that all the testimony on which the judge founds his opinion should, in cases within the jurisdiction of this court, appear in the record."

Under the authority of the act of May 8, 1792 (1 Stat. 276, sect. 2), this court, at its February Term, 1822, adopted certain rules of practice for the courts of equity of the United States. 7 Wheat. v. Rules 25, 26, and 28 related to the taking of testimony by depositions, and the examination of witnesses before a master or examiner; but by Rule 28 it was expressly provided that nothing therein contained should "prevent the examination of witnesses *viva voce* when produced in open court."

These rules continued in force until the January Term, 1842, when they were superseded by others then promulgated, of which 67, 68, 69, and 78 related to the mode of taking testimony, but made no reference to the examination of witnesses in open court, further than to provide, at the end of Rule 78, that nothing therein contained should "prevent the examination of witnesses *viva voce* when produced in open court, if the court shall, in its discretion, deem it advisable."

Afterwards (in August, 1842) Congress authorized this court to prescribe and regulate the mode of taking and obtaining evidence in equity cases. 5 Stat. 518, sect. 6. While these Rules remained in force substantially as originally adopted, and before any direct action of the court under the special authority of this act of Congress, the case of *Sickles* v. *Gloucester Co.*, 3 Wall., Jr., 186, came before Mr. Justice Grier on the circuit; and he there held, that, notwithstanding the rules, witnesses might still be examined in open court. It was his opinion that the act of 1789 guaranteed to suitors the right to have their witnesses so examined, if they desired it; that Rule 67

did not affect or annul the act of Congress or the policy established by it; and that a party had therefore the right to demand an examination of witnesses within the jurisdiction of the court *ore tenus*, according to the principles of the common law, either by having them produced in court, or by having leave to cross-examine them, face to face, before the examiner.

This case was decided in 1856; and at the December Term, 1861, of this court, Rule 67 was amended so as to provide for the oral examination of witnesses before an examiner. The part of the rule as amended, pertinent to the present inquiry, is as follows:—

" Either party may give notice to the other that he desires the evidence to be adduced in the cause to be taken orally; and thereupon all the witnesses to be examined shall be examined before one of the examiners of the court, or before an examiner to be specially appointed by the court, the examiner to be furnished with a copy of the bill and answer, if any; and such examination shall take place in the presence of the parties or their agents by their counsel or solicitors, and the witnesses shall be subject to cross-examination and re-examination, and which shall be conducted as near as may be in the mode now used in common-law courts. The depositions taken upon such oral examinations shall be taken down in writing by the examiner in the form of narrative, unless he determines the examination shall be by question and answer in special instances, and, when completed, shall be read over to the witness and signed by him in the presence of the parties or counsel, or such of them as may attend; provided, if the witness shall refuse to sign the said deposition, then the examiner shall sign the same: and the examiner may, upon all examinations, state any special matters to the court as he shall think fit; and any question or questions which may be objected to shall be noted by the examiner upon the deposition, but he shall not have power to decide on the competency, materiality, or relevancy of the questions; and the court shall have power to deal with the costs of incompetent, immaterial, or irrelevant depositions, or parts of them, as may be just."

The act of 1789, in relation to the oral examination of witnesses in open court, was not expressly repealed until the adoption of the Revised Statutes, sect. 862 of which is as follows:—

" The mode of proof in causes of equity and of admiralty and maritime jurisdiction shall be according to the rules now or hereafter prescribed by the Supreme Court, except as herein specially provided."

Since the amendment of Rule 67, in 1861, there could never have been any difficulty in bringing a case here upon appeal, so as to save all exceptions as to the form or substance of the testimony, and still leave us in a condition to proceed to a final determination of the cause, whatever might be our rulings upon the exceptions. The examiner before whom the witnesses are orally examined is required to note exceptions; but he cannot decide upon their validity. He must take down all the examination in writing, and send it to the court with the objections noted. So, too, when depositions are taken according to the acts of Congress or otherwise, under the rules, exceptions to the testimony may be noted by the officer taking the deposition, but he is not permitted to decide upon them; and when the testimony as reduced to writing by the examiner, or the deposition, is filed in court, further exceptions may be there taken. Thus both the exceptions and the testimony objected to are all before the court below, and come here upon the appeal as part of the record and proceedings there. If we reverse the ruling of that court upon the exceptions, we may still proceed to the hearing, because we have in our possession and can consider the rejected testimony. But under the practice adopted in this case, if the exceptions sustained below are overruled here, we must remand the cause in order that the proof may be taken. That was done in *Conn. et al.* v. *Penn., supra,* which was decided before the promulgation of the rules. One of the objects of the rule, in its present form, was to prevent the necessity for any such practice.

While, therefore, we do not say, that, even since the Revised Statutes, the circuit courts may not in their discretion, under the operation of the rules, permit the examination of witnesses orally in open court upon the hearing of cases in equity, we do say that now they are not by law required to do so; and that, if such practice is adopted in any case, the testimony presented in that form must be taken down or its substance stating in writing, and made part of the record, or it will be entirely disre-

garded here on an appeal. So, too, if testimony is objected to and ruled out, it must still be sent here with the record, subject to the objection, or the ruling will not be considered by us. A case will not be sent back to have the rejected testimony taken, even though we might, on examination, be of the opinion that the objection to it ought not to have been sustained. Ample provision having been made by the rules for taking the testimony and saving exceptions, parties, if they prefer to adopt some other mode of presenting their case, must be careful to see that it conforms in other respects to the established practice of the court.

The act of 1872 (17 Stat. 197, Rev. Stat., sect. 914) providing that the practice, pleadings, and forms and modes of proceeding, in civil causes in the circuit and district courts, shall conform, as near as may be, to the practice, &c., in the courts of the States, has no application to this case, because it is in equity, and equity and admiralty causes are in express terms excepted from the operation of that act.

We might, therefore, affirm the decree below, because there is no testimony before us in support of the defence; but, if we waive this question of practice, — which, on account of its importance, and the misapprehension that exists in respect to it in some of the circuits, we have thought it proper at some length to consider and determine, — and look to the merits of the case, we find no error.

The defence, as stated in the answer, amounts to nothing more than that Garlington, in the progress of the negotiations for the sale of the claim against Stuart to Blease, stated that the claim was worth $6,000, and undertook to obtain judgment upon it for Blease, and that Stuart died before a judgment was obtained, and his estate was so utterly insolvent that it would not pay any thing like $6,000 on the claim. There is no pretence that there was not at least $6,000 due from Stuart, or that Garlington had any better means of knowing his pecuniary condition than Blease had: on the contrary, it appears that Blease made the purchase because he was the friend of Stuart, and desired to put a stop to the proceeding on the part of Garlington to force him into bankruptcy, which seemed to be endangering his life in his then feeble state of health. Cer-

tainly, under such circumstances, it would have been easy for Blease to test the truth or falsehood of the statement made by Garlington; and, if he did not, it was his own fault. He had no right to rely upon the representations of Garlington. It was his duty to use reasonable diligence to inquire and ascertain for himself whether Garlington's estimate of the value of the claim was correct or not.

But again: from the answer itself, it is apparent that the statement relied upon was only an expression of opinion as to the value of the claim, and that Blease had no right to consider it as any thing else. The language is, that "this respondent was induced to purchase said claim at $6,000 by the assurance of the complainant that said claim was worth at least $6,000; and he made some calculations to show this, and said, as this claim was worth $6,000, it would not be right for him to take less than that sum, and that he would not do it." There seems to have been no dispute as to the amount. All depended upon the ability of Stuart to pay. Each of the parties had equal opportunity of judging as to that. Certainly there is nothing to show that Garlington had any advantage over Blease in this respect. Garlington was pressing Stuart into bankruptcy to coerce payment. This Blease desired to prevent, and for that purpose was willing to purchase the debt, and pay for it as much as it was worth. The parties were engaged in endeavoring to ascertain what this was, and the whole subject was equally open to both for examination and inquiry. Under such circumstances, neither party is presumed to trust the other, but to rely upon his own judgment. *Smith* v. *Richards*, 13 Pet. 37.

So, too, as to the alleged undertaking on the part of Garlington to obtain judgment on the claim. There is no allegation that he was not proceeding for that purpose, without unnecessary delay, up to the time of the death of Stuart, or that Blease, when Stuart did die, was not in as good condition, for all the purposes of collection, without a judgment, as he could have been with. We are clearly of the opinion, therefore, that the answer, if taken as true, did not present a valid defence; and, as the defendant could not make any defence by his proof different from that set out in his pleading, the court below very properly refused to hear any testimony in support of the answer.

This makes it unnecessary to consider the questions presented in the argument as to the competency of the proof offered.

*Decree affirmed.*