## In re COVINGTON.

(District Court, E. D. North Carolina. August 24, 1901.)

1. BANKRUPTCY—DISCHARGE—FINDINGS OF REFEREE.

The findings of fact of a referee in bankruptcy on petition for discharge, where a rule of court requires him to hold the meeting to consider it, will not be disturbed, except for clearly-shown error.

2. SAME—REPORT OF REFEREE—EXCEPTIONS.

In excepting to findings of fact or conclusions of law by a referee in bankruptcy, equity rule 83, requiring the errors to be specifically pointed out, should be followed.

In Bankruptcy.

J. H. Cook, for petitioner.

B. F. McLean and Patterson & McCormick, for defendant.

PURNELL, District Judge. On the 8th day of March, 1901, petitioner was duly adjudged a bankrupt, and on June 10th following filed a petition for discharge. Notice of a meeting of creditors was duly issued, and at such meeting certain creditors objected to the discharge on grounds which are set out in specifications filed. The referee finds the facts, and recommends the discharge be granted. A consideration of the cause has been delayed at the request of counsel, on account of conflicting engagements in their state courts.

Referees are important officers in the administration of the bankrupt law, and great weight should be given their decisions. In many respects their relation to the court corresponds to that of a master in chancery, especially under the rule in this district requiring them to hold the meeting of creditors to consider the petition for discharge, which is a general order of reference,—a duty not required by statute. The findings of fact by a referee will not, therefore, be reversed, unless it is clearly shown there is error in such findings, such as would, under the equity rules, which govern in bankruptcy proceedings, by express provisions of the statute, justify the reversal of a master in an equity cause. Referees are not only judicial officers charged with the performance of the duties prescribed in the statute, for the faithful performance of which they take and subscribe an official oath, but are also required to give bond to insure the observance of the oath. This is an unusual requirement, of a quasi judicial officer. Being thus bound, their decisions should not be lightly treated, but given the consideration due to conclusions reached by conscientious officers seeking to discharge their duty to the best of their ability. That they sometimes err is to be expected. So do the ablest judges of all the courts. But they should not be reversed except upon clear and convincing proof of error, especially as to the findings of fact, when they have seen the witnesses and heard them testify.

There are five specifications in opposition to the discharge, which will be considered in detail:

The first specification charges that the bankrupt made a false oath, in that he swore he did not know he was insolvent when he transferred the cotton mill stock to S. W. Covington, on January 1, 1901. Upon a careful examination of the original record of bankrupt's ex-

amination (B), the referee finds no evidence to support this charge. He therefore recommends that this specification be overruled. The finding of the referee on this specification is affirmed. There are no satisfactory grounds to say the referee is not correct in his conclusion.

The second and fifth specifications are to the same transaction. From the evidence and the schedules it appears that on March 31, 1900, the bankrupt borrowed from J. D. Shaw, Jr., $1,500, and, to secure the same, he and his wife executed a mortgage on his wife's land. The note was due March 31, 1901. Just prior to the execution of the mortgage the bankrupt had constructed upon the land two stores at a cost of about $1,300; the money having been borrowed to replace the money which the bankrupt had expended upon the said buildings, and to finish paying for their erection if needed. On the 9th day of February, 1901, before the said mortgage fell due, the bankrupt made a payment on the same to Mr. Shaw of $1,300, knowing that he (the bankrupt) was insolvent. On February 21, 1901, the bankrupt executed a general assignment to W. H. Neal. The second specification charges that the bankrupt made a false oath, in that he failed to schedule this $1,300 payment as a debt due by his wife to him; and the fifth specification charges that he had concealed assets, by not scheduling this $1,300 as a debt due by his wife to him. Under Schedule A (2), "Creditors Holding Securities," the following appears:

"John D. Shaw, Jr., has a mortgage, dated on or about 31st March, 1900, on wife's property. This was given to secure a debt of bankrupt for money loaned him. Amount of mortgage was $1,500, on which a payment of $1,300 was made by bankrupt on the 9th day of February, 1901. The wife's property is located northeast side of Main street, Lauringburg, N. C. The said Shaw holds the above note, for which bankrupt's wife became surety. The value of said property is about $2,500. J. D. Shaw, Jr., resides in Lauringburg, N. C. Bankrupt's wife signed said mortgage and note as surety for bankrupt."

The referee held the statement of the transaction as appears in the schedules is sufficient to negative the idea of concealment of assets and false oath, and recommends that these specifications be overruled. The specifications are overruled. The suggestion (for it is only a suggestion) of false oath and concealment of assets is too remote to sustain a refusal of discharge, under the statute.

"In specification 3, objectors charge that bankrupt failed to keep proper books, with fraudulent intent, etc. While it appears books were not kept as carefully as they should have been, the evidence will not support the finding that a fraudulent intent was present, or that there was any omission to keep books in contemplation of bankruptcy." The language of the statute is (section 14b, Bankr. Act):

"Discharge the applicant unless he has (1) committed an offense punishable by imprisonment as herein provided; or (2) with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of accounts or records from which his true condition might be ascertained."

The finding of fact by the referee is affirmed, and the specification overruled.

The referee says:

"It appears from the evidence that S. W. Covington had clerked for the bankrupt 'pretty much all last year,' and the bankrupt had borrowed from said S. W. Covington $100. That there had been no contract between the bankrupt and said Covington as to how much was to be paid for services as clerk, but just prior to the transfer to him of said stock $300 was agreed upon. The value placed upon the said mill stock was $400. The objectors charge that the delivery by the bankrupt to S. W. Covington of this mill stock just prior to his execution of his deed of assignment to W. H. Neal constituted a concealment of assets. From the evidence it does not appear that the debt was fraudulent or fictitious, nor that there was any concealment of assets in this transaction. The referee therefore recommends that this specification be overruled."

The conclusion or charge of objectors is not sustained, but is a mere inference. The debt not being fraudulent or fictitious, it was a recognition and payment of what was due. If not in full, this would have been a preference; but, being in full, the conclusion of the referee that it was no concealment of assets is sustained by the evidence in the cause. The payment of a bona fide debt is not a concealment of assets, or the discovery of microscopic germs of dishonesty to some creditors in making such payments, sufficient grounds for refusing a discharge in bankruptcy. The recommendation of the referee is adopted, and the specification overruled.

In excepting to findings of fact or conclusions of law by a referee in bankruptcy, equity rule 83, and the construction thereof in Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343, 38 L. Ed. 164, should be followed, except where otherwise provided in the bankruptcy act. It was intended referees should do the detail work in bankruptcy causes (section 39, Bankr. Act), and the district judge should review their action on exceptions thereto. An order will be entered granting a discharge according to the petition.