DRESSEL et al. v. NORTH STATE LUMBER CO.

(District Court, E. D. North Carolina. December 13, 1902.)

1. BANKRUPTCY—EXCEPTIONS BEFORE REFEREE.

Exceptions taken before a referee in bankruptcy must be specific, as required by the settled practice of the federal courts.

2. SAME—CLAIMS—RIGHT TO CONTEST.

Only creditors of a bankrupt whose claims are allowed have any standing to contest the claims of others.

3. SAME—PREFERENCES.

A payment received by a creditor of a bankrupt from a third party, and which did not come out of the assets of the bankrupt, ·does not constitute a preference.

4. SAME.

A bank advanced money on a check drawn by a corporation, which afterward became a bankrupt, with the express agreement that the money was to be used only for a particular purpose. It was not so used, and was later returned to the bank in payment of the check. *Held*, that such transaction did not constitute a preferential payment, so as to affect other claims of the bank against the estate in bankruptcy.

5. SAME—PROCEEDINGS BEFORE REFEREE—OBJECTIONS TO EVIDENCE.

A referee in bankruptcy is governed by the rules in equity in taking testimony, and is not authorized to excuse a witness from answering questions on objection thereto.

6. SAME—FEES OF REFEREES.

A special allowance to a referee for services performed, in addition to the fees fixed by the bankruptcy act, cannot be made, even with the consent of the attorneys for the parties in interest.

In Bankruptcy. On review of report of referee.

Graham & Graham, for petitioners.

Manning & Foushee and Guthrie & Guthrie, for other claimants.

PURNELL, District Judge. After the former decision in this cause, March 11, 1901 (107 Fed. 255), other creditors joined in the petition, and without objection the North State Lumber Company was on August 20, 1902, adjudged a bankrupt, and the cause referred. Under the original order (see above citation) made in the cause the petitioners took depositions in support of their claims, which depositions seem to be full. After the adjudication the parties were before the referee, and the case is now before this court on the report or what purports to be the report of the referee. This report is defective in many particulars, especially in that the referee does not state his findings of fact and conclusions of law, but certifies the depositions, book of proceedings, and papers filed, in which the questions raised on the hearing appear when pointed out. Possibly the cause should have been re-referred for a proper report, but on account of official engagements the record was not examined until counsel had argued the case. It appears from the argument, and what can be gleaned from the record, that two claims are contested: First, the claim of I. N. E. Allen & Co., amounting to $7,630.60, divided up by assignment as follows: Edw. A. Pierce, $284.76, Fred. H. Dressel, $367.10, Eugene F. Perry, $5,999.55, and I. N. E. Allen & Co. $999.42; second, the

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 526.

claim of the First National Bank of Durham for $2,485.92. The objections to the first claim, as divided up, was sustained, and the claim disallowed. The second claim was allowed by the referee.

The claims of I. N. E. Allen & Co. and their assignees, as set out above were objected to on the ground that neither were creditors of the North State Lumber Company, but, on the contrary, the said I. N. E. Allen & Co. was indebted to the bankrupt, and a suit involving the settlement of this contention is now pending in the courts of New York. Taking all the testimony and documentary evidence, it appears the dealings between the bankrupt and I. N. E. Allen & Co. were without financial basis, and what is known in commercial circles as "kiting." To go into the mystic details of these dealings has made a voluminous record, from which it is exceedingly difficult to eliminate facts. The claims classified above all depend upon the dealings between the bankrupt and I. N. E. Allen & Co., who did business at 31 Nassau street, New York, as wholesale dealers in lumber. I. N. E. Allen, who resided in New York, was an officer of the bankrupt corporation at Durham, N. C. E. A. Pierce frequently signed the checks and drafts of I. N. E. Allen & Co. From a careful examination of a complicated record and account, it appears and is found as a fact that I. N. E. Allen & Co. were financiering a bankrupt corporation, and adopted a system by which the corporation did not get ahead of them, and at the time of the filing of the petition and at the time of the assignment of the claims above, instead of being indebted to I. N. E. Allen & Co., the said I. N. E. Allen & Co. were indebted to the North State Lumber Company. Therefore the decision of the referee disallowing these claims is affirmed.

The exception to the ruling of the referee refusing to allow these claimants further time to take depositions in New York is overruled. As before said, the depositions seem to be full. Ample time was allowed for the taking thereof,—six or eight months,—and it was understood by the parties from the initiatory steps in this cause that their claims were contested. Many exceptions in the record it is unnecessary to notice in detail. They are what are termed "broadside" exceptions. Exceptions must be specific. This is too well settled in the United States courts to require the citation of authority. For the purpose of appeal, if parties are so advised, these exceptions are overruled.

The claim of the First National Bank was originally $10,496.42, including two accepted drafts, which appear to have been assigned to Wilson R. Hunter for $4,010.50 and Sydney C. Chambers for $4,000; total $8,010.50. These drafts were stricken from the claim by order of the referee, to which ruling the bank excepted. This ruling of the referee is affirmed. The objections to the proceedings before the referee for not granting time, etc., were matters of discretion with the referee, and, it not appearing it worked an injustice to even parties making such objection, but the facts were fully disclosed, such objections are without force.

The bank, after deducting claims which it had assigned, was permitted to prove a claim for $2,485.92, which is made up as follows: A draft for $185.35, drawn by A. G. Fleming on the North State Lumber

Company Sept. 25, 1900, at three months, duly accepted and paid by the bank; an acceptance of the North State Lumber Company indorsed by A. G. Fleming, at three months, for $612.10; acceptance of North State Lumber Company indorsed by A. Max, ninety days, for $396.06; a note for $1,250, drawn by I. N. E. Allen & Co., indorsed by the North State Lumber Company, and discounted by the First National Bank; an overdraft of the North State Lumber Company for $42.40, maturing December 1, 1900. The claim of the First National Bank was objected to by Frederick H. Dressel, I. N. E. Allen, and others, which objections were answered by the assertion these parties were *not creditors of the bankrupt*. This the referee found to be true, and the court affirms such findings. Not being creditors, their claim not allowed, they had no interest in the bankrupt estate or interest in the funds thereof; hence no right to be heard. It is not for parties not interested to interject objections in bankruptcy proceedings. They might be heard by permission of the court, under the equity rules, upon it appearing they had a bona fide interest in the fund; but they had no such interest.

The bankrupt corporation, in the assignment complained of as an act of bankruptcy, acknowledged itself indebted to the bank in a much larger sum than that now allowed, which indebtedness has been materially reduced by the withdrawal of notes which seem to have been assigned before the petition was filed. The objections were based on the allegation the bank had received a preference by payments on a claim of said bank against I. N. E. Allen & Co. and H. L. Garwood, upon which claim the bank had entered suit, and $800 was paid to the attorney for the bank within four months of the filing of the petition in bankruptcy by one of the defendants. This $800 was paid by check to J. S. Manning, Esq., attorney, not by the bankrupt, not out of the assets of the bankrupt estate, but upon a separate and distinct commercial paper. The acceptor on commercial paper is the principal debtor, the presumption being he owes the drawer of the draft, and one who discounts such paper may elect to sue such acceptor as principal, or the drawer of the draft as surety. But the payment was not by the bankrupt, and in no way reduced the assets of the bankrupt estate. It in no way worked an inequitable distribution of the bankrupt's assets, and could in no way be a preference. The money was paid by Garwood, not out of the bankrupt estate. H. L. Garwood signed a note at three months, payable to I. N. E. Allen & Co., for $803.51, August 22, 1900. This note was discounted by the First National Bank, and the amount placed to the credit of the North State Lumber Company. Why, does not appear. The name of the lumber company does not appear in or on the note. Suit was entered on this note, and the $803.17 was paid to J. S. Manning, attorney for the bank. Counsel claim this was a preference, but the court is unable to understand why, as the bankrupt was in no way connected with the payment or the suit. The bank acquired title to the note when the money was paid a year or more before the petition was filed, and the lumber company was in no way connected therewith.

There was another transaction, claimed by creditors represented by P. C. Graham, Esq., to be a preference, but this was not pressed in

the argument, and there is no force in the position that it is a preference. The facts are as follows: By an express agreement between Cochran, the president of the North State Lumber Company, and the First National Bank of Durham, a check (No. 566), drawn for $3,500, by the North State Lumber Company, Limited, by John R. Cochran, president, payable to the order of John R. Cochran, and indorsed as follows: "John R. Cochran. North State Lumber Co., by John R. Cochran, President. Manufacturers' National Bank of Baltimore, Murchison National Bank of Wilmington, and the Fidelity Bank of Durham." This check was presented for payment on October 30th, and paid on the 31st of October. The check was given for a specific purpose, and was to be placed in the Manufacturers' National Bank of Baltimore to the credit of the North State Lumber Company in that bank, subject to the check of J. S. Manning, attorney for the North State Lumber Company. It was deposited there as the basis of a loan that they were to make through the Manufacturers' Bank, which was not made, and the money was withdrawn from the bank by the check of J. S. Manning, attorney of the North State Lumber Company, and placed to the credit of the North State Lumber Company in the First National Bank of Durham, N. C., to pay the check No. 566, drawn on the First National Bank, and the proceeds of check No. 566 for $3,500 was returned to the First National Bank in that way. It was also agreed between Cochran and the First National Bank of Durham that the money should be placed in the Manufacturers' National Bank in the way indicated for the purpose of preventing any use of the money in any business of the North State Lumber Company. Witness testified, "The money was put there first to obtain the loan, and the loan was not granted, and the money was placed back where it originally came from." The whole transaction was in two checks.

The overdraft of $42.50 is also argued as a preference, and many decisions cited to sustain the objection. Had the bank been the bankrupt, this would have been a preference; but this is not the case. The bank is the creditor. The overdraft did not effect a benefit in its favor to the detriment of other creditors of the North State Lumber Company, but increased the assets, on paper, of that corporation to this amount. The object of the Bankrupt Act, § 60 [U. S. Comp. St. 1901, p. 3445], as said by the supreme court in Pirie v. Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, so far as creditors are concerned, is to secure equality, in the distribution, among all, of the property of the bankrupt. There are many decisions to the same effect (some of them cited on the argument) by other courts, but this decision of the supreme court is the test. The objections urged and noted, thus tested, are not a preference under the statute. It does not appear the bank has received any property or money belonging to the bankrupt which gives it a preference,—an unequal, inequitable share of the assets of the bankrupt. The claim of the bank as noted is allowed.

There are many exceptions to the ruling of the referee, some of which should be sustained; for instance, the referee, on simple objection, excuses witnesses from answering questions, notably the cashier of the bank. The referee should have noted the objection and answer,

and reported the facts as they occurred. Referees are governed by the rules in equity in taking testimony. These exceptions in the record were not, however, pressed in the argument, and do not seem to have affected any substantial right of petitioner who made the objection. The facts necessary to a determination of the controversy fully appear. Hence it is deemed unnecessary to remand the cause, and further complicate it.

Since the hearing a petition has been presented, attested by the consent of attorneys of all the parties asking for an order to pay certain claims for labor and cost of preserving the estate after the petition was filed; also an allowance of $150 to W. K. Yates, referee. Under section 64b, subds. 1–4 [U. S. Comp. St. 1901, p. 3447], actual and necessary cost of preserving the estate subsequent to the filing of the petition and wages to workmen which have been earned within three months are given priority, and may be paid without consent. An order will be entered providing for the payment of these claims by drafts drawn under general order 29 (32 C. C. A. xxviii, 89 Fed. xii).

A special allowance to a referee for services performed under the statute cannot be made, even with the consent of attorneys. The fees fixed by statute are in full compensation. General Order Sup. Ct. 35 (18 Sup. Ct. ix); Bankr. Act, § 40. The consent of attorneys would not justify the court in reading into the statute what congress failed to put there, or in violating the provisions of the act as construed by the supreme court. The order for a special allowance is refused. Referees are entitled to the fees allowed in the bankrupt act for services required under the act, and will be allowed none other for such services.