BANK OF RAVENSWOOD et al. v. JOHNSON et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1906.)

No. 621.

1. BANKRUPTCY—PRACTICE BEFORE REFEREES—OBJECTIONS TO EVIDENCE.

It is the duty of a referee in bankruptcy on a hearing before him either as referee or as special commissioner to receive and record all evidence offered, noting objections made as required by General Order No. 22 (89 Fed. x; 18 Sup. Ct. vii).

2. SAME.

A referee is not required to stop proceedings before him and to certify to the court for decision questions raised on objections to evidence.

3. SAME—PUNISHMENT OF CONTEMPTS.

A referee has no power to punish a witness for contempt in refusing to answer questions or to produce documents that power being expressly vested in the District Court by Bankr. Act July 1, 1898, c. 541, § 41b,

30 Stat. 556 [U. S. Comp. St. 1901, p. 3437], which also clearly pre-
scribes the duty of the referee.

Petition for Revision of Proceedings of the District Court of the
United States for the Northern Distrist of West Virginia at Clarksburg.
In Bankruptcy.

Dorr Casto and W. N. Miller, for petitioners.
Walter E. McDougle, for respondents.
George W. Johnson, pro se.

Before PRITCHARD, Circuit Judge, and PURNELL, and KEL-
LER, District Judges.

PURNELL, District Judge.   The counsel in this case did not ap-
pear at the hearing, but George W. Johnson, referee and special mas-
ter, appeared, read the record and proceeded to argue the case when
he was stopped by a question from one of the judges sitting.   This
was a petition to revise and superintend in matters of law a proceed-
ing in bankruptcy, and the writer takes occasion to say that the record
is exceedingly unsatisfactory, and the conduct of the case on the part
of the contesting creditors not commendable in the eyes of the court.
It is not satisfactory, for instance, for counsel to say to this court
that the facts appear in the record, instead of making a succinct
statement of facts, especially when they do not appear at the hearing.
The District Judge says, in an opinion filed, which is the best state-
ment of the case to be found in the record:

"In compliance with this order [referring a petition for discharge to the
referee as special master to take the testimony and find the facts], the
referee on the 13th day of February, 1905, commenced the taking of tes-
timony with a view to ascertaining such facts and up to April 18, 1905,
had made a record of 342 full typewritten pages, consisting largely of wholly
immaterial matters, captious objections, remarks of counsel, reiterations
of the same questions, and demands, to such an extent as to trespass to the
last limit upon the patience of any court required to read it.   It is abso-
lutely safe to say, in my judgment, that every fact adduced in this record
that in the remotest degree could be deemed material could and ought to
have been clearly and fully presented in a record of 50 such typewritten pages.

"This criticism, kindly made, is justified by the fact, that the end of it
has by no means, apparently, been as yet reached, for these 'depositions' stand
uncompleted and the referee's duty unperformed, because, on petition and
application of the protesting creditors, an order was entered on the——day
of April, 1905, in the nature of a rule, by this court, against said referee, to
cause him to answer and show cause for his alleged misconduct in refusing
to admit testimony offered, and refusing to certify for review questions aris-
ing before him touching the admissibility of such evidence, and by his rul-
ings practically causing certain witnesses to refuse both to answer certain
questions and produce certain written evidence.   To this petition and rule the
referee has made answer and has certified the evidence taken, and this
matter above is now before the court for its consideration.

"It seems that the parties, all represented by counsel, started out under
the idea that the referee was to sit as a court and determine upon what tes-
timony was admissible and what was inadmissible, and that they were to be
bound by his rulings in this particular.   A large amount of the testimony
was taken under this understanding, when, it appears, counsel for the
opposing creditors objected and supporting the objection with authorities that
convinced the referee that he had been proceeding wrongly, he reversed his
ruling, and determined that notwithstanding his opinion and judgment was

against the admissibility of certain evidence he would nevertheless permit the witness to answer the questions and allow the evidence to go to the court. To correct the error of his first method of procedure the referee recalled the witness Prewett, about whose testimony the trouble had arisen, and allowed all rejected matter to be enquired of under his statement and ruling that the objection should be sustained. Thereupon, the witness Prewett refused to produce certain books demanded of him, and the referee refused to compel him to do so and further refused to certify the matter to the court for revision, on the ground that, before so certifying, all the testimony should be taken and all questions of objection certified at one and the same time. It should be added that the protesting creditors insisted that his expressing his opinion touching the admissibility of the testimony encouraged witnesses to refuse to answer and produce such testimony. Thus it will be seen that substantially three practical points have arisen touching the practice to be observed by the referee in taking testimony before him. (1) How far has he the power to pass upon and determine the admissibility of evidence presented to him? (2) When is he required to certify objections made to his rulings to the court for revision? (3) What power has he to determine as to whether a witness is recalcitrant and in contempt or not, and, if held to be so, what proceeding should be taken against him?"

We cannot concur in the decision of the District Court that a referee "acting in his character as referee or as special commissioner has the right to exclude evidence which he deems inadmissible." For this holding In re Wilde's Sons, 11 Am. Bankr. Rep. 714, 131 Fed. 142, is cited, and the learned judge states there are many cases to the contrary. Even if the conflicting decisions are considered, the general orders passed by the Supreme Court are controlling; they have the force of the statute, are made pursuant to express authority in the statute. The same question was raised in Re Sturgeon, 14 Am. Bankr. Rep. 681, 139 Fed. 608 (Circuit Court of Appeals, Second Circuit), in which the court says:

"Per Curiam. Under General Order No. 22 (89 Fed. x; 18 Sup. Ct. vii), the duty of the referee is to receive the evidence which is offered, to note objections and to record the evidence; and if either party persists in offering incompetent or irrelevant matter in evidence, the other party has a remedy, because the rule provides that 'the court shall have power to deal with the costs of incompetent, immaterial, or irrelevant depositions, or parts of them, as may be just.' The equity practice is to be followed by referees. The order directs him to proceed as referee. The referee must take all the evidence and note objections."

And the latter clause of General Order 22 of the Supreme Court '(89 Fed. x; 18 Sup. Ct. vii) provides:

"The referee shall note upon the deposition any question objected to, with his decision thereon; and the court shall have power to deal with the costs of incompetent, immaterial or irrelevant depositions, or parts of them, as may be just."

No amount of argument could make the matter plainer. Any one who will can understand. To the same effect the equity rule and the decision in Re Natelle De Gottardi, 7 Am. Bankr. Rep. 723, 114 Fed. 328; Dressel v. N. St. Lumber Co., 119 Fed. 531, 9 Am. Bankr. Rep. 541, In re Covington, 110 Fed. 143, 7 Am. Bankr. Rep. 373, Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521; Mears v. Lockart, 94 Fed. 275, 36 C. C. A. 239. The Philadelphian, 60 Fed. 425, 10 C. C. A. 127, 1 Gould & Tucker's Notes (2d Ed.) 200, 259, 102. The referee

and special master followed a different rule at first, but afterwards reversed his order, took down all the testimony, noted objections with his rulings thereon, and certified the record thus made to the District Court. The reference was to relieve the court and under the authorities this was the proper course. The petitioners have nothing to complain of.

But suppose the general orders of the Supreme Court had not provided as rule 22 (89 Fed. x, 18 Sup. Ct. vii) does for such proceedings; the bankruptcy act provides that when not otherwise provided the equity practice shall be followed and an examination of the rules in equity touching proceedings before a standing master or master pro hac vice will disclose the fact that the general orders in bankruptcy are in accord with such proceedings. This contention of petitioners that a referee should on objection stop the proceedings and certify questions raised has no foundation on which to rest. To permit such practice would create useless confusion and accomplish no good end. General Order 27 (89 Fed. xi; 18 Sup. Ct. viii) provides:

"When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall file with the referee his petition therefor setting out the error complained of; and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

See In re Hawley, 8 Am. Bankr. Rep. 632, 116 Fed. 428; Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521.

The referee, therefore, was right in refusing to stop the proceedings and certify for revision his rulings upon this testimony. In fact, this being a matter referred to him especially to ascertain facts alone, designed to aid the court in performing its duty in determining whether the bankrupt should be discharged or not, no possible revision could be had. The utmost extent the court could go would be to discharge the referee from further consideration of the matter and take it up and decide it without his assistance. There was therefore no excuse for this rule against the referee on this ground. The above disposes of the first and second questions.

Third, what power has a referee to determine as to whether a witness is in contempt or not, and, if held to be so, what proceeding should be taken against him? This presents no difficulty, for as a matter of law it is well settled by the bankrupt act itself. In a case where a referee believes a witness improperly refuses to testify or produce written testimony, after being ordered to do so, in other words, to be in contempt for any reason, it is his plain duty to set forth the contempt upon his record, certify the facts to the district judge, who will deal with the question as if the contempt had originally arisen in the District Court. The statute is explicit on this subject, and reference in such matters first to the statute, the proceeding and jurisdiction being strictly statutory, will, in most cases, solve doubts which otherwise plague and trouble the legal mind. Section 41 of the bankrupt statute (Act July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]) provides:

"Contempts before referees. a. A person shall not, in proceedings before a referee (1) disobey or resist any lawful order, process, or writ; (2) misbehave during a hearing or so near the place thereof as to obstruct the same; (3) neglect to produce, after having been ordered to do so, any pertinent document; or refuse to appear after having been subpœnaed, or, upon appearing, refuse to take the oath as a witness, or, after having taken the oath, refuse to be examined according to law:

\* \* \* \* \* \* \*

"Contempt proceedings, penalty. b. The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the act complained of, and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of, the court."

The power to punish for contempt committed before referee is conferred by section 2, cls. 13, 16 (30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]), read in connection with the section quoted. The power to punish for contempt is vested in the court—judge. It is a judicial power and cannot be referred or delegated. Smith v. Belford, 106 Fed. 658, 45 C. C. A. 526, 5 Am. Bankr. Rep. 291; Boyd v. Glucklick, 116 Fed. 131, 53 C. C. A. 451, 8 Am. Bankr. Rep. 393. But this proceeding is against, not the witness for refusing to obey an order of court, but the referee for refusing to make an order requiring the witness Prewett, a man not shown to be connected with the bankrupt, but a partner of his son, to submit his books; not the part of such books which it was suggested by counsel pertained to the partnership or the bankrupt's connection therewith, but his books entire, to be examined. Nor does it appear this witness Prewett refused to answer any proper question he was directed by the referee to answer. There is no element of contempt set out in the record on the part of either the referee or the witness. Romine, the bankrupt, and Prewett, the witness, deny most positively that G. R. Romine, the bankrupt, was a partner, which was alleged on information and belief, based on street conversation, and Prewett is called as a witness for the party making the allegation. He was his witness and the party calling him was bound by his testimony. This is elementary, as is the rule that a party cannot contradict or cross-examine his own witness. The course pursued can be viewed in no other light than an attempt to violate and ignore all the rules of evidence regarding this witness. Prewett denied most positively that G. R. Romine had any interest in the partnership, produced the original written agreement under which such partnership was formed between himself and John W. Romine, duly acknowledged, also the agreement by which such partnership had been dissolved on January 2, 1904, his cashbook, journal, ledger, the notes demanded, the statement of bankrupt's account with the firm, and stated that he had disclosed all that his books would show relating to his connection with either J. W. or G. R. Romine, the bankrupt. Petitioners' counsel persisted, without specifying what they wished to prove, in a general demand for all the books, and the referee ruled it was not necessary for them to be produced. This ruling was proper and

one the referee had authority in his quasi judicial capacity to make, subject to review by the district judge upon the whole record being certified as provided in the statute. It was not a proper time or subject, as was afterwards held by the judge, for a rule to show cause. There is no merit in the petition to regulate and review, hence it is adjudged that the District Court be affirmed in the order discharging the rule on the referee and the petition dismissed. This conclusion renders a consideration of the demurrer by G. R. Romine unnecessary. He seems to be only remotely interested in this petition to revise and review, if at all, and was not a necessary party. He will recover his costs in this court. The petitioners will be taxed with the costs in this court and it is suggested that the District Court tax the contesting creditors with all "wholly immaterial matters, captious objections, remarks of counsel, reiterations of the same questions and demands" included in the depositions taken before the referee or special master and all unnecessary costs incurred at their instance.

Petition dismissed.