YOUNG v. WELCH MFG. CO.

(District Court, D. Massachusetts. July 29, 1912.)

No. 269.

1. WITNESSES (§ 269*) — CROSS-EXAMINATION — EQUITY SUITS IN FEDERAL COURTS.

The rule announced in Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521, requiring all testimony offered in an equity suit to be received and recorded, regardless of objection to its competency, relevancy, or materiality, does not enlarge the limits of cross-examination as recognized in the federal courts, which restrict it to matters disclosed on the direct examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. WITNESSES (§ 269*)—CROSS-EXAMINATION—EQUITY SUITS IN FEDERAL COURTS.**

A petition to require a witness in an infringement suit to answer certain questions on cross-examination considered, and granted in part.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

In Equity. Suit by Samuel D. Young, trustee, against the Welch Manufacturing Company. On defendant's motion for an order to compel witness under examination to answer certain questions. Granted in part.

See, also, 201 Fed. 519.

Nathan Heard, of Boston, Mass., for complainant.

Fred L. Chappell, of Kalamazoo, Mich., for defendant.

DODGE, Circuit Judge. The bill in this case alleges infringement by the defendant of United States letters patent No. 987,183, which the plaintiff claims to hold by assignment from the patentee, and asks for an injunction and an accounting. An answer and replication having been filed, the plaintiff's testimony is being taken before a special examiner under an order of this court entered June 15, 1912, pursuant to the sixty-seventh equity rule.

The present motion is made on the defendant's behalf. It asks that Oscar L. Smith, a witness produced on behalf of the complainant in rebuttal, be required to answer certain questions put to him in cross-examination. It sets forth extracts from the record, certified by the examiner, containing the questions to which the motion relates, with the objections noted thereto by counsel, and the answers made by the witness, so far as any answers have been made. The entire record before the examiner, also certified by him, has also been submitted.

[1] For the general rule applying under such circumstances, which has been declared and applied in not a few reported cases, reference may be made to Dowagiac, etc., Co. v. Lochren, 143 Fed. 211, 74 C. C. A. 341, 6 Ann. Cas. 573; Nelson v. U. S., 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673. All are, of course, based upon Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521. The rule is that all evidence offered is to be taken and recorded, including that held to be incompetent or immaterial, in order that the appellate court, should the case ultimately come before it, may pass upon its competency or materiality, render a final decree, and thus conclude the litigation, without remanding the case in order to procure evidence held to have been wrongfully excluded. From this general rule—

"the evidence of a privileged witness, evidence plainly privileged, and evidence which clearly and affirmatively appears to be so incompetent, irrelevant, or immaterial that it would be an abuse of the process or power of the court to compel its production or to permit its introduction, are excepted." Missouri, etc., Co. v. Hamilton, 165 Fed. 283, 91 C. C. A. 251; First Nat. Bank v. Abbott, 165 Fed. 852, 855, 91 C. C. A. 538.

The above applies when the competency, relevancy, or materiality of the testimony sought to be elicited is in question. But I agree

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with the learned judge for the New Jersey district in believing that it is not to be regarded as enlarging the limits upon cross-examination recognized in the federal courts, and should not be so applied as to permit such a result. See Æolian Co. v. Standard, etc., Co. (C. C.) 176 Fed. 811; Ferry-Hallock Co. v. Orange, etc., Co. (C. C.) 185 Fed. 816. In the first of these cases it was said that "in Blease v. Garlington no judicial consideration was given as to the proper scope of cross-examination" (176 Fed. 814); and in both cases the court refused to compel answers, because the attempted cross-examination was not confined to the matters disclosed on direct examination. When, as in the present case, the direct examination is in rebuttal, there is the more reason for confining cross-examination within the limits referred to. Moreover, in view of the fact that an order to answer must be enforced, if at all, by contempt proceedings against the witness, it is clear that the court cannot be expected to order any question to be answered which is ambiguous in form, or whose terms do not afford reasonable opportunity for a definite and intelligent answer. And, lastly, I do not understand that, because the examination is under the sixty-seventh equity rule (29 Sup. Ct. xxxiii), the court has lost any of that discretionary power to restrict cross-examination which it possesses under circumstances not infrequently arising.

[2] Proceeding to consider the different questions to the witness which are specified in the petition, it appears that the witness said, in answer to Cross-Int. 264, that he did not understand the question clearly enough to give an intelligent answer. Nothing which appears in the petition enables me to say that this reply was not made in entire good faith, nor does any attempt appear to have been made to render the question more intelligible to the witness.

In reply to Cross-Int. 271, the witness said that the question was decidedly technical, involved matters pertaining to differences in patents, that he was not qualified to testify upon such matters, and could not answer such a question. I find no sufficient ground for believing that this answer was not given in good faith, nor can I find that the witness was in fact qualified to give testimony which he said he was not qualified to give.

Cross-Int. 366, after an introductory statement by counsel, with which it seems to me to have been unnecessary to incumber the record, concludes by asking the witness to give a condensed statement, or, if he could not do this, an elaborate statement; "of what you think your invention really is." The exact scope of the patent is a question in the case to be determined by the court. What the inventor may think its scope is, is, of course, plainly immaterial upon the question of its scope. It does not appear that the witness assumed to be an expert or was testifying in that capacity. But he is the inventor and the original patentee. He had undertaken in his direct examination in rebuttal (Int. 22) to give "a brief history of what led up to" his invention, and to state how that invention was brought about. His own notion, therefore, of what his invention really is, may, if

disclosed, have some bearing upon the weight to be given to some of his statements made in the course of his "brief history." At least, it is impossible to say now that it cannot possibly have any such bearing. I think, therefore, that he should make the best answer he can. There has been no outright refusal to answer. He has only stated that he did not feel competent to answer. I do not think any order of court is called for at present.

Cross-Ints. 476, 477, and 478 may be considered together. The witness was asked (Cross-Int. 478), "Did you make such a statement to Rogers, Peet & Co.?" What is meant by "such a statement" appears from Cross-Int. 476, asking the witness if he had not theretofore "stated quite elaborately and at length your views as to what you had invented to Rogers, Peet & Co., when you were threatening them with suit and attempting to dissuade them from purchasing wardrobe cases manufactured by the defendant herein." The witness said, in answer to Cross-Int. 476, that the discussions with Rogers, Peet & Co. related to the proposed installation or sale of wardrobes to be made in accordance with a design not like the defendant's structure, that the discussions were since this suit was brought, and that the notice to them was largely conditioned upon the result of this suit, in connection with a pending interference suit. This seems to admit that there were discussions with the firm referred to. The inquiry whether in those discussions the witness had stated his views as to what he had invented, or not, is a preliminary question only, and does not seem to raise distinctly the question whether the witness could be called upon to repeat the statements then made, if any, regarding his views of his invention. I find nothing, however, in the witness' direct examination, which seems to me to give cross-examining counsel a right to call upon him to repeat the statements to Rogers, Peet & Co., if made. Cross-Int. 478 also asks whether or not statements made to them were not accompanied with a statement from the witness' counsel or patent attorney. This inquiry seems to me even less justified. I must, therefore, decline to order the witness to answer this question.

Cross-Ints. 479 and 480 ask the witness to say whether he did not send certain original letters, papers purporting to be copies of them being shown him, to Rogers, Peet & Co. and others. This is asking him, not only whether he sent letters to the persons named, but also to say, without the originals before him, whether or not the papers shown him were copies. The inquiry whether he had sent such letters or not seems to me not opened by anything in the direct examination, and I must decline to order the witness to answer. It may be added that they have not been identified by the examiner, and, strictly speaking, form no part of the record.

Cross-Ints. 808–810: In Cross-Int. 807 the witness had been asked whether certain features in Fig. 3 of the patent in suit did not constitute what might be called, within the limits of its action, a "self-righting rack construction." Objection was noted, but the witness did not refuse to answer. He said it did not. Asked

to explain why not (Cross-Int. 808), he declined to do so, because the expression above quoted was "probably quoted from another invention which he controlled, and which is now involved in an interference in the Patent Office"; also because the question was calculated to get information on that subject. Cross-Ints. 809 and 810 pursue the same topic. It is conceded that the three questions involve an application for a patent by the witness upon which interference proceedings are pending, and it is contended that section 4908, Rev. Stats., excuses the witness from answering. Having stated, without objection, that what was called to his attention in the patent in suit did not constitute a "self-righting mechanism," I think he should answer these questions so far as to explain why not. I do not think he is called upon to answer, regarding what is involved in the interference, further than necessary for such explanation.

Cross-Ints. 876–879: 876 and 877 are the only questions which the witness declined to answer. 876 would require him to construe a paper offered in evidence by the defendant, during his cross-examination, and which the defendant asked to have marked as an exhibit, against the plaintiff's objection. The record fails to show that it has been properly made evidence in the case, or that the witness has given any such testimony about it as made this request proper in cross-examination. 877 is argumentative merely, and it assumes the witness to have stated, about the paper referred to, what the record does not show him to have stated. I must decline to make any order regarding these questions.

Cross-Int. 888 is in renewal of the inquiry made in Cross-Ints. 479 and 480, which I have declined above to order the witness to answer.

Cross-Int. 902 again questions the witness regarding his pending patent application referred to above in Cross-Ints. 808–810. I am unable to believe that I am justified in compelling an answer.

Cross-Int. 903 is merely preliminary. Whether what it may lead to is objectionable, or not, cannot be known at this stage. The witness should answer this question.

Cross-Ints. 904–906: 904 asks the witness if he had not "asserted" what follows in the question. When or where asserted, or to whom, is not stated. Without these specifications, I do not understand that a witness can properly be asked in cross-examination whether he has not made statements claimed to be at variance with his direct testimony. 905 and 906 are based on the assumption that he has made the "assertions" or statements recited in 904. I cannot order him to answer these questions.

Cross-Int. 945: The witness answered this by saying that he did not feel competent to point out the matter called for, if any, in the original specification and claim. Being unable to say that this answer was untrue, or not, in good faith, I cannot undertake to compel further answer.

Cross-Ints. 951–954: The only refusal to answer consists in the

statement, made in reply to .952, that the question called for expert knowledge and interpretation, which the witness was not qualified to give. My ruling must be the same as in regard to 945.

Cross-Ints. 958, 969, 970: There has been no express refusal to answer these questions. That the witness did not go so far as he could reasonably be expected to go in answering them is not clear to me, and I am unable to believe that any order to him to go further would be justified.

Cross-Int. 973: The witness did not refuse to answer, but asked that the question be made more definite. The cross-examiner insisted that his question was clear and required an answer. In Cross-Int. 972, immediately preceding, the witness had been asked:

"If you can find the precise language in the original, I wish you would point it out. I believe you have already endeavored to point out the substance."

To this he had answered that he found the phraseology different in some respects, but the substance appeared to be the same in both paragraphs. In view of this, it seems to me reasonably clear that by "anything like," in Cross-Int. 973, similarity in substance, and not in phraseology, was intended. But if the witness had already endeavored to "point out the substance," the question, so understood, is a mere renewal of the same inquiry. Conceding, what seems to me at best doubtful, that the line of inquiry attempted in this question was justified by anything in the direct examination, to pursue it further, under the circumstances, can mean only argument with the witness regarding the comparison of documents, which the court can compare for itself. Whether to permit this, or not, seems to me clearly within the discretion of the court, and, being unable to see that any useful purpose can be served by permitting it, I must decline to require further answer.

The result is the witness is ordered to answer Cross-Int. 808 to the extent above indicated, and to answer Cross-Int. 903. The petition is denied, so far as it relates to the remaining questions specified.

The petition further asks that the witness be directed "to answer questions generally," and "to answer all questions fully without argument." If, under any circumstances, such an order could be justified, nothing shown me in this record seems to me to afford sufficient justification in this case. Considering that the 101 direct questions put to this witness, with his answers, occupy 53 pages of the record, while in cross-examining him 872 questions have been put, and 233 pages of the record occupied, I think an unusually strong reason should appear for action by the court tending to protract the examination further.